**UNION PACIFIC RAILROAD COMPANY, a corporation, Appellant,**

v.

**LaVerl JOHNSON and Joleen Johnson, husband and wife, and Pacific Fruit Express Company, a corporation, Appellees.**

**No. 14498.**

United States Court of Appeals
Ninth Circuit.

Nov. 8, 1957.

Bryan P. Leverich, Salt Lake City, Utah, L. H. Anderson, E. C. Phoenix, Pocatello, Idaho, for appellant.

George R. Phillips, B. W. Davis, Louis F. Racine, Jr., Pocatello, Idaho, for appellees.

Before STEPHENS, Chief Judge, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Our first decision herein, Union Pacific Railroad Company v. Johnson, 9 Cir., 233 F.2d 427, was peremptorily reversed on January 14, 1957, by the Supreme Court, Johnson v. Union Pacific, 352 U.S. 957, 77 S.Ct. 359, 1 L.Ed.2d 316, in the following words:

> "It is ordered and adjudged by this Court that the judgment of said United States Court of Appeals, in this cause be, and the same is hereby reversed on the authority of Russell v. City of Idaho Falls, 305 P.2d 740, decided by the Supreme Court of Idaho, December 24, 1956; and that this cause be, and the same is hereby remanded to the Court of Appeals for proceedings consistent with this holding."

This is a case where LaVerl Johnson suffered horrible injuries as an employee of Pacific Fruit Express Company in a

transformer station at Pocatello, Idaho. For that he had a workmen's compensation award, but he sought more in the form of a judgment against Union Pacific. This he obtained as a result of a jury verdict in the district court. Our reversal was on the ground that we believed Idaho law would not require a supplier of electricity to insist that a consumer of electricity (under penalty of discontinuance of current) rebuild an electrical device with the most modern safety appliances when the apparatus was modern at the time it was built. (This opinion generally will presuppose a reading and familiarity with our earlier decision.)

Naturally we are now confronted with the problem of the scope of our present review. If the Supreme Court had intended to reinstate the district court's judgment, it would have done so. This it often does. Gibson v. Phillips Petroleum Co., 352 U.S. 874, 77 S.Ct. 16, 1 L.Ed.2d 77, and Williams v. Carolina Life Insurance Co., 348 U.S. 802, 75 S.Ct. 30, 99 L.Ed. 633.

In our opinion, 233 F.2d at page 432, we said, "Union Pacific raised other points not necessary to consider in view of our conclusions here." We deduce that that sentence was what sent the case here again rather than a mandate to the district court to reinstate Johnson's judgment.

▇ Union Pacific complains bitterly that it was never permitted before the Supreme Court's decision to give that court its views on the City of Idaho Falls case, supra, and it argues here that we have a right to put our own appraisal on that case and that the case is not contrary to our decision. The railroad, in effect, would have us proceed [1] under the opinion of the Supreme Court minority which reads:

"Mr. Justice Reed, Mr. Justice Frankfurter, Mr. Justice Burton,

and Mr. Justice Harlan would not grant the petition for writ of certiorari, but in any event, upon its being granted, would vacate the judgment of the Court of Appeals and remand the case for reconsideration by that court in light of the decision of the Supreme Court of Idaho in the case of Russell v. City of Idaho Falls, 305 P.2d 740, decided by the latter court December 24, 1956, after the decision in the present case."

But while this court did not have the foresight to anticipate the Supreme Court's decision, it can still count to four; and, to five. Therefore, it is not for us to say that perhaps the City of Idaho Falls case did not undercut our ruling (no duty), or possibly is actually favorable to the railroad on the point.

In our view, however, except for our holding of no duty of a supplier of electricity to require modernization of equipment to include latest safety devices, the case is now before us in the same posture it originally came to us. Ex parte Century Indemnity Co., 305 U.S. 354, 59 S. Ct. 239, 83 L.Ed. 216; Sprague v. Ticonic Bank, 307 U.S. 161, at page 168, 59 S.Ct. 777, 83 L.Ed. 1184.

▇ But we are not done with the City of Idaho Falls case. Paradoxically, Union Pacific, also a defendant in that case, escaped as a constructive employer [2] (made so by statute) of Russell even though actually it did not employ Russell. Now, says the railroad, Johnson too was a constructive employee. Johnson mainly answers the contention by saying that Union Pacific put this contention in its brief in the Supreme Court when it requested a rehearing which was denied, 352 U.S. 1019, 77 S.Ct. 555, 1 L.Ed.2d 561. In the petition there the railroad relied heavily on its argument that it was a constructive employer of Johnson and cited the very same City of Idaho Falls case (used by the Supreme Court for the

---

1. Actually the railroad's argument condenses down to: "There is no difference between the majority order and the minority's dissenting views."

2. Cf. Beedy v. Washington Water Power Co., 9 Cir., 238 F.2d 123.

reversal) as positive authority for not reversing; that is to say, our Court of Appeals was correct upon a ground never presented here. The point having been in papers before the Supreme Court, says Johnson, the point has been decided against the railroad by the highest possible authority; so the railroad is bound. With much of this we must disagree.

The point of "statutory employer" was never advanced in district court. It was never presented in this court until the case came back from Supreme Court, and we cannot believe that the high court intended to rule one way or the other on the point. There is no evidence that that court did and we find no order or authority that requires us to say the Supreme Court held against the railroad on the point. The Supreme Court did nothing more than reverse us on the ground we thought dispositive of the case. Johnson is wrong in contending that so much was there decided, just as Union Pacific is wrong in its position that nothing really was decided there.

■ However, this court does decide that it should not entertain the question for the reason that the problem was never presented to the trial court.[3] If the point be valid, and it may, still it is not of such character which, if valid, would deprive the district court of basic jurisdiction. Perhaps this court has the naked power[4] to consider the point, but it would be a serious abuse of discretion, as a minimum, to consider it.[5] One of the things that ought to be certain is that parties do not find themselves trying a new and different case on each successive higher branch of the appellate tree. If this rule is observed, plaintiff and defendants in the end will profit from the certainty of the law.

On this point of "statutory employer" we cannot agree with Johnson that it has

no merit, although there is a possibility he may be right that the question did not have a sufficient evidentiary basis for the court or a jury to make a determination. We just do not reach the question on its merits.

■ Appellant would have us now reexamine its contention that it was not a seller, that it did not "furnish" electricity to Pacific Fruit Express. We do not decide that we can now reconsider our ruling on this subject. For the purpose of discussion, we shall assume we can. It is probable that instead of holding there was a sale, we should have held it was a question of fact as to whether there was a sale from Union Pacific to Pacific Fruit Express. This point, if finally presented to the jury, was very sketchily presented. Yet as to this issue the defense accepted the court's instructions.

Examining the evidence, we find a Pacific Fruit intra-company budget document of January 12, 1925, points to a pooled purchase of electricity at Pocatello by that company and by Union Pacific's predecessor, Oregon Short Line. That is a rather remote date. And it is only a Pacific Fruit document. Later, on January 8, 1951, Union Pacific bills Pacific Fruit on a monthly statement as follows:

> "Your proportion for cost ($492.-30) of electric current furnished at Pocatello, Idaho, in accordance with meter reading for the month: October 22 to November 22, incl. Such current being furnished by the Idaho Power Co., is being billed for in accordance with contract audit No. 16,-598 dated June 10, 1930."

This, too, tends to negate a sale of power. However, nowhere in evidence does the contract of June 10, 1930, appear. Conversely, Shoup, a Pacific Fruit Express superintendent testified without ob-

---

3. Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A. Also, Rule 51, if a factual issue was involved. Carr v. City of Anchorage, 9 Cir., 243 F.2d 482; Hebets v. Scott, 9 Cir., 152 F.2d 739; United States v. Marshall, 9 Cir., 230 F. 2d 183, at page 193.

4. Much different is the case where we disagree with the trial court upon the ground it used, but agree to the correctness of the decision on a ground not urged below. In such a case an appellee is permitted to prevail.

5. Also, see our Rule 18, 2(d), 28 U.S.C.A.

jection that his company "purchased" the electricity from the Union Pacific. Later in the trial he testified that Pacific Fruit "operate[s] it as far as the sub-station and the meter reading is concerned, under a written agreement . . . between the Pacific Fruit Express Company and the railroad company."

We can conceive it tenable that Idaho would recognize that two parties could make a pool purchase of electricity in the field of a limited joint venture and that thereunder each purchaser would not be liable for the other's known defective equipment. This even could be consistent with the billing by the utility to one purchaser and rebilling by that purchaser to the other. Certainly, if one purchaser was selling to the other, there is no indication that it met the definitions of 61–118 and 61–119 of the General Laws of Idaho, I.C., 1947, or had any certificate of necessity. Perhaps some written documen of the parties not produced might have permitted a ruling that as a matter of law there was no sale. As the trial concluded, the issue was not less than one of fact hardly touched upon in the instructions.

■ We believe the questions presented as to proximate cause on the appeal originally are still open for consideration by this court, even though Johnson thinks not. And we do not think the City of Idaho Falls case is helpful on causation to either party here. It would appear that Pacific Fruit Express, protected by Idaho workmen's compensation, contributed two proximate causes:

1. Failure to open switches to deenergize ground wires within the transformer site and

2. Failure to warn Johnson of dangerous conditions, he not being a trained electrician.

■ Idaho law, we are sure, would hold Union Pacific liable if it supplied a concurring proximate cause. And a cause is legally sufficient as proximate if there was foreseeability of some harm to persons from furnishing electricity to equipment dangerous to the untrained that could have been made relatively undangerous by remodeling to meet modern safety advancements. There is no pat answer here on the point of causation or the case would have ended ere now. As jurymen we would say that Union Pacific should not have to here anticipate anything but care on the part of Pacific Fruit, but after reading all the cases cited and many others, we are inclined to believe that the Idaho Supreme Court would say, assuming duty (now foreclosed from further consideration by this court by the application of the out-of-order equipment and appliance rule to equipment lacking the latest safety devices), that other jurymen were entitled to consider and conclude that something of the character that did happen would happen; therefore, Union Pacific should have foreseen and guarded against it. The case of Chatterton v. Pocatello Post, 70 Idaho 480, 223 P.2d 389, 20 A.L.R.2d 783, tends to support the railroad here. But we think that Johnson's case may be distinguished from it in that: Union Pacific was furnishing electricity (which we must hold) in violation of a duty (which we are compelled to hold) right up to the time of the injury. The action of the Pocatello Post driver was too remote (we do not mean to say remote in point of time) to supply a proximate cause.

The Idaho negligence decisions are not replete with reference to the Restatement of Torts. But we did not find it rejected there and find it occasionally cited, e. g., Chase v. Washington Water Power Co., 62 Idaho 298, 111 P.2d 872, at page 875. The rules stated in the Restatement of Torts, § 290, § 302, § 431 and § 433 point to submission to a jury the issue of causation here. Someone must decide whether it was in the bracket of foreseeability within the jury's reach. Thus, our best judgment is: that was a jury question. Certainly this is a better case for the jury on causation than Chase's, even if one has doubts that its extremeness would be followed by the Idaho Supreme Court. Furthermore, we cannot be unmindful of the United States

Supreme Court's decisions in the Williams and Gibson cases, supra. Unless that court finds a positive, clear block in the state's decisions, it is inclined to order these diversity negligence cases to the jury.

Of course, in negligence cases there is always a certain amount of economic determination. It is perfectly foreseeable when one builds a railroad that at various country crossings negligent drivers will get their entirely innocent passengers on the crossing and get them killed by carefully driven trains. It is foreseeable that open country irrigation canals will prove attractive nuisances to children. Yet, without more we do not generally hold the railroads or canal companies in such cases. And we think the reason is that the world must go on and we do not impose a duty.

■ This court has carefully considered the defendant's contentions as to excessiveness of the verdict. Heretofore, we have undertaken to overturn a judgment considered grossly excessive. Baldwin v. Warwick, 9 Cir., 213 F.2d 485. Cf. Southern Pacific v. Guthrie, 9 Cir., 186 F.2d 926.

LaVerl Johnson was only 23 years of age at the time of the accident and was earning $300.00 per month. His life expectancy was 40 years. One might have concluded from observing Johnson as he testified that he would never have the capacity to earn more than $300.00 per month. If so, even being liberal with money for pain and suffering, the verdict of $225,000 would appear excessive. But the jury also may have thought that even though Johnson had married young, which perhaps arrested his formal education, he did have ambition and qualities for self-improvement and advancement, and that he was not destined to be a three hundred dollar man all of his life. Of some slight weight is the circumstance that when he had recovered about as much as he could, we find him with his artificial limbs out selling newspaper ads and going to college, trying to improve himself for his family's sake and his sake. Maybe the jury thought this quality would have asserted itself even if he had not been hurt. We do not mean by dicta to resolve other cases, but it is reasonable to say the case would have been different if Johnson had been older and his life's pattern had become set. And, by what we have said, we do not mean to suggest that hereafter plaintiffs' lawyers should prepare themselves for their appearances here by sending their badly injured clients immediately to college.

Here we are of the opinion that the verdict almost reaches the area of too much, but we believe it is one which it is our duty to let stand. A trial court has broader powers than we to order new trials in large verdict cases. It saw fit not to order a new trial here, which we hold to be within its discretion.

The judgment of the district court is affirmed.