**MERRITT–CHAPMAN & SCOTT COR-PORATION, Appellant,**

v.

**Bernice M. FRAZIER, Appellee.**

**No. 16543.**

United States Court of Appeals Ninth Circuit.

April 18, 1961.

Shimmell, Hill & Kleindienst, Rouland W. Hill, Phoenix, Ariz., for appellant.

Langerman & Begam, Samuel Langerman, Phoenix, Ariz., for appellee.

Before STEPHENS, Senior Circuit Judge, and MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This is an action for wrongful death under the statutes of Arizona.[1] Jurisdiction of the District Court is based upon diversity of citizenship.

On August 24, 1957 Robert C. Frazier was instantly killed by a rockslide at the site of the Glen Canyon Dam near Page, Arizona. He was then working at the bottom of the canyon on the westerly side of the Colorado River where his employer, Mountain States Construction Company, was engaged in driving a tunnel through which to divert the water of the river while the dam was being constructed.

Thereafter Bernice M. Frazier, his surviving widow, on behalf of herself and the decedent's four minor children, commenced this action in the District Court for damages against Merritt-Chapman & Scott Corporation, the company building the dam. She charged in her complaint that the defendant, in the course of excavating near the rim of the canyon above the place where Frazier was working, had negligently caused the fatal slide. The

---

1. Sections 12–611 and 12–613, Ariz.Rev.Stat.

jury rendered a verdict in favor of plaintiff, judgment was duly entered, and the defendant has appealed.

Defendant contends that the District Court lacked jurisdiction over the subject matter of this suit because before plaintiff filed her complaint the cause of action for Frazier's death had been irrevocably vested in the State of Arizona for the benefit of the Workmen's Compensation Fund of that State.

■■ The Workmen's Compensation Act of Arizona extends monetary benefits to the dependents of an employee who, while engaged in his duties, is killed by the wrongful act of a third person not in the same employ. However, such dependents may not claim the death benefits available to them under the Act and in addition prosecute the cause of action for wrongful death: they must choose between the two rights (State ex rel. Industrial Comm. v. Reese, 1952, 74 Ariz. 425, 250 P.2d 1001). The Act also provides that if the "election" is to take compensation then "the claim against such other person shall be assigned to the state for the benefit of the compensation fund or to the person liable for the payment thereof" (Sec. 23–1023, Ariz.Rev.Stat.) and that a " * * * legal representative in event death results, who makes application for an award * * * waives the right to exercise any option to institute proceedings in court. * * * " Sec. 23–1024, subd. A., Ariz.Rev.Stat. However, an application for an award of death benefits will constitute the requisite "election" (which effects the transfer of the cause of action to the state by operation of law (Moseley v. Lily Ice Cream Co., 1931, 38 Ariz. 417, 300 P. 958) ) if, but only if, the applicant when filing the application has knowledge "(1) of the alternative remedies and (2) that the acceptance of one waives the right to the other [citations omitted]. With this construction Sec. 56–950, supra (i. e., Sec. 23–1024, Ariz.Rev.Stat.), is constitutional.[2] If the applicant does not have this knowledge, whether his ignorance be one of law or fact, he has in fact made no binding election." State ex rel. Industrial Comm. v. Pressley, 1952, 74 Ariz. 412, 416, 250 P.2d 992, 994.

Defendant initially raised the issue of jurisdiction in the District Court by motion for summary judgment. This motion was denied, defendant then renewed the objection and was granted a hearing on the issue. The evidence was undisputed: Mrs. Frazier had applied for benefits following her husband's death, but testified that at the time she was ignorant of her right to bring suit against defendant. She did not learn of this right until shortly before December 3, 1957, the date when the Industrial Commission of Arizona entered an award in favor of Mrs. Frazier and her children. It also appears that on December 23, 1957, Mrs. Frazier, by an instrument entitled "Election of Remedy," notified the Industrial Commission that she elected to prosecute the cause of action against the wrongdoer, and the Commission, on January 14, 1958 made an order suspending and withholding payment under the award. No payments have ever been made.

At the conclusion of the hearing, the District Court rejected the defendant's objections to jurisdiction, saying:

"The essential finding is that the plaintiff, Bernice Frazier at the time when she made the claim for compensation did not know of her right to

2. Appellant suggests that the scienter requirements were imposed as a result of Article 18, Section 6 of the Arizona Constitution, A.R.S., which prohibits the abrogation of only the common law action for personal injuries (see Alabam's Freight Co. v. Hunt, 1926, 29 Ariz. 419, 242 P. 658) ; and that since an action for wrongful death is purely statutory (Sec. 12–611, Ariz.Rev.Stat.) ; In re Lister's Estate, 1921, 22 Ariz. 185, 195 P. 1113, the Constitution does not prohibit an "election" of remedies even though made without the requisite knowledge. This argument is answered by Worthington v. Industrial Comm., 1959, 85 Ariz. 310, 338 P.2d 363, wherein the Arizona Supreme Court recognized that the same requirement of a "reasonable" election applied equally to the statutory action for wrongful death.

elect to bring an action against the third party as provided by the statute; that thereafter when advised of her rights, she promptly made an election in the light of her alternative benefits, and that the election was timely and validly asserted, and that accordingly this Court has jurisdiction of this action, the Court concludes as a matter of law.

"The objection to the jurisdiction of this Court is denied."

Defendant does not contend that this conclusion of the District Court lacks evidentiary support but rather vigorously urges that the award which the Commission made on December 3, 1957 pursuant to plaintiff's application constituted an adjudication of all matters essential to an allowance of death benefits including the fact that plaintiff had made a valid election; and that this award was a final one which under Rule 37 of the Commission may not be set aside, modified or otherwise disturbed unless a petition for rehearing is filed within twenty days of the service of the award.[3]

Defendant then concludes that " * * * the Commission lost 'power to deal with

the case' for the lack of a timely petition for rehearing; re-examination of the award was forever foreclosed. The award 'became final and not subject to reversal by the commission.' "

■ However, we must disagree. The commission still had jurisdiction over the matter on December 23, 1957, for twenty days had not yet elapsed. By filing the "Election Remedies" on that date, the defendant notified the commission that she had never waived her right to seek damages.[4] If the "Election" was to be countenanced the award could not stand. In addition, as a petition for rehearing the "Election" would prevent the award from becoming final and would preserve and continue the jurisdiction of the commission "to enter into such further proceedings as will result in a proper award." Smith v. Industrial Comm., 1959, 87 Ariz. 69, 347 P.2d 1010, 1011.

■ The "Record of Commission Action" of January 14, 1957, wherein the order of the Commission appears, unmistakably demonstrates that the "Election" was accepted and dealt with by that body as an application for rehearing.[5] By that order the Commission conformed the

---

3. This argument rests upon the proposition stated by the Arizona Supreme Court that:
"The commission had jurisdiction of the subject matter and in the exercise of that jurisdiction it had the power to determine the effectiveness of the rejection. It probably erroneously decided the matter but its decision was in the exercise of its jurisdiction and became final and not subject to reversal by the commission upon the expiration of the time for filing an application for rehearing. After the commission has lost power to deal with the case, it cannot of its own motion or an application of any one re-examine evidence to determine whether its original decision was correct." Green v. Industrial Comm., 1955, 78 Ariz. 347, 280 P.2d 268, 269-270; see also, London v. Industrial Comm., 1950, 71 Ariz. 111, 223 P.2d 929; Narramore v. Fannin's Gas & Equip. Co., 1956, 80 Ariz. 115, 293 P.2d 671.

4. Section 23-942, Ariz.Rev.Stat., comprising a part of the Workmen's Compensation Act, permits the Commission to

dispense with the observation of "formal rules of procedure other than as provided in this chapter." There is no statute prescribing the form of an application for rehearing and we note that the Arizona Supreme Court has recognized that the Commission may in its discretion waive formal defects in a petition for rehearing. Nolasco v. Borden Co., 1950, 69 Ariz. 277, 212 P.2d 999; Rhoades v. Lee Moor Contracting Co., 1942, 60 Ariz. 161, 132 P.2d 432; Kasalica v. Industrial Comm., 1946, 65 Ariz. 28, 173 P.2d 636.

5. The text of the "Record of Commission Action" is as follows:
"The Industrial Commission of Arizona
"Record of Commission's Action
"Case No. AP 24557
"Bernice M. Frazier, Widow and Robert C. Frazier, Linda Joy Frazier, Kent M. Frazier and Cleveland J. Frazier, Minor Children, Applicant, vs. Mountain States Construction Company, Defendant Employer. The Industrial Commission of Arizona, Defendant Insurance Carrier.

award to the "Election" making the former subject to and contingent upon plaintiff's first asserting a suit for damages. After such suit the award would be effective but only if plaintiff's recovery was less than the amount of the death benefits established by the award. In that event, plaintiff would be entitled to the difference.[6]

Following the District Court's decision on the Motion to Determine Jurisdiction and Motion for Summary Judgment, defendant commenced a suit in the Superior Court of Arizona under the Declaratory Judgment Act of that State and at the same time moved the District Court to suspend its proceedings pending the outcome of that suit. The denial of a stay is also assigned as error.

The issues tendered by defendant's complaint in the State Court were essentially the same as those presented to the District Court by defendant's Motion to Determine Jurisdiction and for Summary Judgment. Defendant, however, urges that since their resolution rested upon underlying questions of local law not the subject of statute nor as yet declared by the highest court of Arizona, the District Court "should have deferred its decision with respect to matters of local law until those issues could have been decided with finality in an action then pending in the state court."

We conclude that the lower court did not abuse its discretion by refusing to stay the proceeding before it.

The defendant had already submitted these very issues to the District Court and only after an adverse decision solicited the State Court to pass upon them. Justification for the denial of the stay might well be rested on that fact. However, there is a more cogent reason for our conclusion. Although the decision of a federal court on a doubtful issue of state law has been characterized as " * * * a forecast rather than a determination, * * * a tentative answer which may be displaced tomorrow by a state adjudication," (Railroad Comm. of Texas v. Pullman Co., 1941, 312 U.S. 496, 499, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971) the Supreme Court has also repeatedly emphasized " * * * the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment."

Moreover, that court has held that the mere fact the District Court in the exercise of its diversity jurisdiction is obliged to make decisions based upon its interpretation of state law is not alone

---

"Findings

"1. That the above-named applicant, Bernice M. Frazier, having heretofore filed her widow's claim for compensation on September 28, 1957, for and on behalf of herself and the above-named minor children.

"2. That this Commission treated said claim as applicant's election to accept benefits and compensation from this Commission provided by the Arizona Workmen's Compensation Laws, and this Commission thereafter on December 3, 1957, rendered its Findings and Award for Death Benefits in favor of said applicant and minor children.

"3. That thereafter on December 23, 1957, the applicant filed an instrument designated as Election of Remedy wherein she specifically elected to proceed against a negligent third party defendant, reserving her right only to a deficiency, if any, against the defendant employer and the defendant insurance carrier.

"Order

"Now, Therefore, It Is Ordered that any and all death benefits due the applicant and said minor children under the terms of said award and the Arizona Workmen's Compensation Laws be, and the same are hereby suspended and withheld, pending the applicant's prosecution of all claims for all damages arising from the accident described in her said widow's claim, or until further order of this Commission."

6. The award was not completely nullified. Under the Arizona statutory scheme if the recovery from the third party is less than the compensation to which he is otherwise entitled, then the deficiency is paid by the Commission. Sec. 23–1023, subd. C., Ariz.Rev.Stat.; Worthington v. Commission, 1959, 85 Ariz. 310, 338 P. 2d 363.

sufficient ground for declining jurisdiction. Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 234, 64 S.Ct. 7, 88 L.Ed. 9. In this connection it was declared that while "[t]he submission of special issues [to a state court] is a useful device in judicial administration in such circumstances as existed in the Magnolia, Spector, Fieldcrest and Pullman cases, supra [7] * * * in the absence of special circumstances, 320 U.S. at [pages] 236, 237, [64 S.Ct. at pages 11, 12, 88 L.Ed. 9], it is not to be used to impede the normal course of action where federal courts have been granted jurisdiction of the controversy." Propper v. Clark, 1949, 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480. Here there were no problems of constitutionality or compelling considerations of policy present which constitute the "special circumstances" that would require or merit a stay to enable defendant to secure from the state court a "definitive answer" to the questions presented.

■■ The contention that the District Court erred in refusing to admit evidence of the award and its present value requires but little comment. Even assuming the award had a present value, this proof, offered for the purpose of mitigating damages, was clearly irrelevant. It is well established that " * * * liability of third party tort-feasors is not intended to be disturbed by the Act" and that payments by an employer or an award by the Industrial Commission do not and cannot reduce such liability. State v. Pressley, supra, at page 997 of 250 P.2d; see also, Siebrand v. Gossnell, 9 Cir., 1956, 234 F.2d 81; Powell v. Wagner, D.C.Wis.1959, 178 F.Supp. 345; Annotation 95 A.L.R. 515.

■ Defendant also complains of the refusal of the trial court to reopen the case for additional evidence. Several witnesses, among them Cooper for the plaintiff and Moore for the defendant, gave detailed "eye witness" accounts of the rock slide and of the accident. After both sides had rested and at the conclusion of the opening argument for plaintiff, counsel for defendant moved to reopen the case and to be allowed to recall Moore to testify that Cooper did not arrive at the scene until after the accident occurred. Counsel asserted that this evidence was only discovered immediately before the motion was made.

"Whether a case should be reopened for new testimony is peculiarly a matter within the discretion of the trial judge * * *." and this record does not show an abuse of that discretion. Anzano v. Metropolitan Life Ins. Co. of N. Y., 3 Cir., 1941, 118 F.2d 430, 435; see also, Welch v. Grindle, 9 Cir., 1957, 251 F.2d 671.

Defendant's lack of diligence is apparent. Cooper testified about the matter as plaintiff's first witness, and several days elapsed before defendant was put to its defense. The proposed evidence was readily available and defendant had ample opportunity in the interim. Moreover, the evidence, being primarily impeaching in character, was related to a collateral issue. "Appellate courts will not ordinarily hold that the trial court has abused its discretion in refusing to open a case for further testimony, when such testimony * * * tends only to affect the credibility of witnesses * *." Stipich v. Krilich, 1922, 122 Wash. 306, 210 P. 788, 789, 215 P. 9; Chemical Delinting Co. v. Jackson, 5 Cir., 1952, 193

---

**7.** The cases referred to are:

Thompson v. Magnolia Petroleum Co., 1939, 309 U.S. 478, 60 S.Ct. 628, 84 L. Ed. 876. Federal jurisdiction was based on the Bankruptcy Act but the sole issue was one of state law.

Spector Motor Service v. McLaughlin, 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L. Ed. 101.

Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355.

Railroad Comm. of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643.

In these latter three cases it was held that the federal court should abstain from deciding an issue of state law in order to avoid a potential federal constitution issue. See also, Leiter Minerals, Inc. v. United States, 1957, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267; Annotation 8 A.L.R.2d 1228.

F.2d 123; Slappey v. United States, 5 Cir., 1940, 110 F.2d 528.

A further contention is that counsel for plaintiff was guilty of such misconduct as to entitle defendant to a new trial. The particular episode relied upon by defendant occurred during the redirect examination of Cooper, the construction superintendent of Mountain States Construction Co. After establishing that the Bureau of Reclamation had made an investigation of the accident, counsel asked the witness whether the Bureau held Mountain States responsible. The court ruled the question out on defendant's objection and directed the jury to disregard the negative answer which the witness had already given. Counsel then asked whether after the accident the Bureau had suggested that Mountain States discontinue any of its methods or that it adopt other procedures. These questions were answered without objection. Thereupon counsel caused a document to be marked for identification and in addressing the witness, said: "You are aware, are you not, Mr. Cooper, that the Bureau of Reclamation made an official report of this investigation?" The witness answered, "I'm sure they did, yes,

Defendant argues that these questions and this use of the inadmissible report sir." [8]

of the bureau were calculated to and did by indirection and insinuation get before the jury evidence that was so highly prejudicial as to effectively deny it a fair trial. This contention can best be answered by the following excerpt from Selaster v. Simmons, 1932, 39 Ariz. 432, 7 P.2d 258, 260:

"However, all these things took place in the presence of the trial court, and upon a motion for new trial were urged upon that court. The motion was denied, and in such denial they were necessarily held not to have prejudiced defendants' rights. The supervision of trials is committed to the trial court, and in matters involving the conduct of counsel, as well as other trial matters, unless it clearly appears that some prejudice has resulted, we think we should defer to the decision and judgment of the trial court. That court had the whole picture before it and was better qualified to pass on the question, and having done so, by the denial of the motion for new trial, we accept its decision and judgment."

Also specified as error is the trial court's denial of defendant's motion to implead the decedent's employer Moun-

---

8. In its brief defendant says: "Then as contemplated and according to plan, opposing counsel [i e., counsel for defendant] objected, which objection was sustained." Defendant's statement suggests a darker picture than the facts warrant for the jury was not made aware that defendant objected to the admission of the exhibit into evidence. The record does show that immediately after the witness gave his answer the Court suspended further proceedings before the jury and held a private discussion with counsel and defendant's lawyer regarding further pursuit of this subject. We quote from the record:

"Mr. Kleindienst [attorney for defendant]: I wonder if we could approach the bench just a moment.

"(Privately to the Court.)

"I am sure plaintiff is going to offer Plaintiff's Exhibit #2, the Bureau's report, which is hearsay on the face of it, and conclusion as to the results of the

investigation of the safety persons for the Bureau of Reclamation, and it cannot be cross examined. I think it is highly prejudicial to even suggest it. We are already put into the position now of trying to conceal something that was done. I think it is highly improper and hearsay.

"Mr. Langerman [counsel for plaintiff]: Your Honor, we wouldn't have gone into this, and we did not offer it in our direct case, except that Mr. Kleindienst kept implying that the Bureau had approved everything that the defendant was doing, and that is our position, I don't want the jury to get that impression.

"The Court: I will instruct counsel for the present not to go any farther with this."

(In Open Court.)

When the questioning resumed no further mention of the report or reference to the investigation was made before the jury.

tain States Construction Company and two of its supervisors.

In support of its motion defendant urged that the persons sought to be joined were guilty of "active" negligence in causing the accident while the negligence of the defendant was "passive." In essence, defendant asserted that it claimed a right to indemnity from said persons based on the doctrine that where one tort feasor is primarily liable and the other is secondarily liable, though both are liable to the injured party, the one secondarily liable is entitled to full indemnity from the one primarily liable for any damages which the one secondarily liable has sustained.[9]

Defendant's motion thus came within the provisions of Rule 14(a) of the Federal Rules of Civil Procedure, 28 U.S.C. A., which enables a defendant to "serve a summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. * * * "[10] However, the language of the rule that " * * * a defendant may move * * * for leave as a third-party plaintiff to serve a summons and complaint * * * [and] if the motion is granted * * * the person so served, hereinafter called the third-party defendant, shall make his defenses * * * " clearly demonstrates that the decision whether to grant or deny leave is one committed to the discretion of the trial court; "and the timeliness of the motion is an urgent factor governing the exercise of such discretion." General Electric Co. v. Irvin, 6 Cir., 1960, 274 F.2d 175, 178. See also, Casey v. Calmar S.S. Corp., D.C.Del.1956, 138 F. Supp. 751; General Taxicab Ass'n v. O'Shea, 1940, 71 App.D.C. 327, 109 F.2d 671.

Here the motion was untimely. Defendant made it only a few minutes before the trial commenced and offered no excuse for the delay.

 Defendant further complains of the court's refusal to instruct the jury on contributory negligence, voluntary assumption of risk and unavoidable accident, defenses which the defendant had tendered by its answer. Defendant was thus entitled to have these defenses submitted to the jury by proper instructions if they found support in the evidence— that is, if there was " * * * such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N. L. R. B., 1938, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; see also, Howard v. Milwaukee & S. P. R. Co., 1879, 101 U.S. 837, 25 L.Ed. 1081; Citizens Utilities Co. v. Firemen's Ins. Co., 1952, 73 Ariz. 299, 240 P.2d 869.[11]

A careful review of the entire record fails to reveal evidence which directly

---

9. Defendant was referring to the doctrine recognized by this court in United States v. Rothschild Intern. Stev. Co., 9 Cir., 1950, 183 F.2d 181. This right of indemnity exists in Arizona: Busy Bee Buffet v. Ferrell, 1957, 82 Ariz. 192, 310 P.2d 817. We, of course, express no opinion whether defendant's claim met these requirements or was valid.

10. The trial court was lenient in entertaining the motion at all. Rule 7(b) in pertinent part provides that motions "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. * * * " (see generally, Sequoia Union High School Dist. v. United States, 9 Cir., 1957, 245 F.2d 227); in addition, since the motion was subsequent to answer, Rule 14(a) required that the motion be made on notice to plaintiff and Rule 6(d) directed that the motion and notice of hearing be served on plaintiff "not later than 5 days before the time specified for the hearing * * *." See General Elec. Co. v. Irvin, 6 Cir., 1960, 274 F.2d 175. Defendant failed to comply with all of those requirements.

11. Defendant may be urging that we apply a different standard. After quoting Art. 18, Sec. 5 of the Arizona Constitution: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, * * * be left to the jury," defendant argues that: "If there is any evidence whatsoever which would warrant a jury in finding that the Deceased was guilty of either contributory negligence or of assumption of risk, or in finding that the death resulted from unavoidable accident, such

or by inference would prove Frazier was or should have been aware of the peril created by the defendant. Lacking such knowledge he was neither guilty of failing to exercise due care for his own safety or deliberately exposing himself to that dangerous condition.

Nor was there any proof justifying the giving of an instruction on unavoidable accident, a term defined by the Arizona Supreme Court as "such an occurrence as under all the circumstances could not have been foreseen, anticipated, or avoided in the exercise of ordinary care." Town & Country Securities Co. v. Place, 1955, 79 Ariz. 122, 285 P.2d 165, 167. Here there was no evidence tending to establish the accident was caused by anything other than negligence. Thus it appeared that the wall of the canyon in the vicinity of the slide area was of rock and although this was eroded by weather and already weakened by cracks and seams, it had been further weakened and rendered more likely to give way by a series of explosive charges which the defendant had set nearby. In addition, there was uncontradicted evidence to the effect that at the time or shortly before the slide occurred defendant was operating a power shovel within a distance of 40 to 60 feet from the rim of the canyon; this machine weighed at least 60 tons and when working caused the surrounding area within a radius of 50 to 75 feet to tremble and shake violently. A slide such as the one that occurred was obviously a foreseeable consequence of this operation.

It is, of course, possible as defendant argues, that the accident had its origin in some independent cause unrelated to the defendant's activities, but an inference must be based upon some concrete proof and not upon speculation or surmise. Gray v. Woods, 1958, 84 Ariz. 87, 324 P.2d 220.

The remaining assignment challenges the order of the District Court denying defendant's motion for new trial on the ground that the verdict was "grossly excessive and monstrous" and rendered under the influence of passion and prejudice. The verdict, general in form, was for $200,000.

Nowhere in the record does it appear that plaintiff made any appeal to sympathy or prejudice and the verdict is not so large in amount as to immediately suggest that the finding of the jury was governed by some improper motive even if size alone were to afford a basis for such an inference. Earl W. Baker & Co. v. Lagaly, 10 Cir., 1944, 144 F.2d 344, 154 A.L.R. 1098; Ford Motor Co. v. Mahone, 4 Cir., 1953, 205 F.2d 267; but see, Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 1951, 191 F.2d 302; Arkansas Valley Land & Cattle Co. v. Mann, 1889, 130 U.S. 69, 9 S.Ct. 458, 32 L.Ed. 854, and our own decision in Southern Pac. Co. v. Guthrie, 9 Cir., 1949, 180 F.2d 295, where the question was expressly left open.

The review of this ruling of the District Court must therefore be confined to a determination whether the damages assessed were so indisputably excessive in the light of the evidence that that court clearly erred in not exercising its power to intercede to prevent a manifest in-

---

questions should have been submitted to the jury for its consideration." If defendant means that this provision of the State Constitution compels such instructions in any case then we must disagree. The Supreme Court of Arizona, in a decision construing the meaning and effect of the provision, has flatly held that "[u]nless, therefore, there was some substantial evidence from which a reasonable man might have inferred it [contributory negligence] existed the court should not have submitted the issue to the jury." Citizens Utilities Co. v. Fire-

men's Ins. Co., 1952, 73 Ariz. 299, 240 P.2d 869, 872; moreover, as the Supreme Court pointed out in Herron v. Southern Pac. Ry. Co., 1931, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857, in a federal court the sufficiency of the evidence to raise an issue of fact for the jury is not a matter that is controlled by state law. See also, Allen v. Matson Nav. Co., 9 Cir., 1958, 255 F.2d 273; Reuter v. Eastern Airlines, 5 Cir., 1955, 226 F.2d 443; Diedrich v. American News Co., 10 Cir., 1942, 128 F.2d 144.

justice; in short, we must decide whether the ruling constituted an abuse of discretion. Cobb v. Lepisto, 9 Cir., 1925, 6 F.2d 128; Siebrand v. Gossnell, 9 Cir., 1956, 234 F.2d 81; Union Pacific R. R. Co. v. Johnson, 9 Cir., 1957, 249 F.2d 674; see also, Southern Pac. Co. v. Guthrie, 9 Cir., 1951, 186 F.2d 926. In this field, "[t]here is difficulty * * * in getting at the pecuniary loss with precision or accuracy * * * the result must be left to turn mainly upon the sound sense and deliberate judgment of the jury." Illinois Cent. Railroad Company v. Barron, 1866, 5 Wall. 90, 72 U.S. 90, 106, 18 L.Ed. 591.

As already noted, Frazier was a married man and the father of four minor children; he was 41 years of age at the time of his death and his life expectancy was 28 years. He was in good health, was an industrious and reliable worker, was a kindly and considerate man devoted to his wife and children, and was employed as a foreman by the Mountain States Construction Company. His regular monthly salary was $550.00 but his actual earnings while at the damsite averaged $750.00 due to overtime pay and in each of the last two months before the fatal accident his earnings were upwards of $900.00.

The Arizona wrongful-death statute broadly provides that "fair and just" compensation may be awarded by the jury to the surviving parties who may be entitled to recover. Sec. 12–613, Ariz. Rev.Stat. Under this statute, the jury was permitted, as the Court instructed, to include in its verdict not only a "fair and just" allowance for the actual pecuniary loss sustained by the widow and each of the several children, but also a like allowance for such non-pecuniary elements of damage as loss of companionship, comfort, and guidance that Frazier would have probably provided to them.

The difficulty in determining whether the damages awarded to this plaintiff represented fair and just compensation or whether they were "grossly excessive" or "monstrous" is obvious.[12] This because such factors as the duration of Frazier's life, his productivity and his income, were at best probabilities and the subjective matters of companionship, counsel and guidance, to name but a few of the other compensable items that the jury could rightly consider, were without a market at all.

"Here we are of the opinion that the verdict almost reaches the area of too much, but we believe it is one which it is our duty to let stand. A trial court has broader powers than we to order new trials in large verdict cases. It saw fit not to order a new trial here, which we hold to be within its discretion." Union Pacific R. R. Co. v. Johnson, 9 Cir., 1957, 249 F.2d 674, 679.

The judgment is affirmed.

---

12. Southern Pac. Co. v. Guthrie, 9 Cir., 1951, 186 F.2d 926.