930 F.2d 777
 Doreen S. SCHOENBERG; Martin Schoenberg; Dan A.
Schoenberg; Adriana Schoenberg, et al.,
Plaintiffs-Appellees,
v.
EXPORTADORA de SAL, S.A. de C.V., a foreign corporation,
Defendant-Appellant.
Doreen S. SCHOENBERG, Plaintiff-Appellee,
v.
EXPORTADORA de SAL, S.A de C.V., Defendant-Appellant.
 Nos. 89-55973, 90-55073.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1991.
Decided April 19, 1991.
 
 John H. Stephens, Robbins & Keehn, San Diego, Cal., for defendant-appellant.
 Robin E. Foor, Belmont, Cal., Gerald C. Sterns, Sterns & Walker, San Francisco, Cal., Peter Nakahara, Nakahara & Hinoki, San Jose, Cal., Eugene Schneider, Oakland, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of California; J. Lawrence Irving, District Judge.
 Before CANBY and RYMER, Circuit Judges, and LEVI*, District Judge.
 RYMER, Circuit Judge:
 
 
 1
 This is a consolidated appeal arising out of an airplane crash in San Diego, California as the plane approached an airport in Tijuana, Mexico. Exportadora de Sal, S.A. de C.V. ("Exportadora") challenges two rulings of the district court: (1) that Exportadora does not have sovereign immunity, and (2) that California law applies to these actions. We affirm.
 
 
 2
 * Exportadora is a corporation which produces salt in Mexico. The Mexican government owns 51% of the corporation and the Mitsubishi Corporation of Japan owns the remainder. Exportadora maintained an office in San Diego, which communicated with outside parties on behalf of the Exportadora plant in Guerrero Negro, Mexico because the plant had no telephone service. In September 1987, five relatives of the plaintiffs traveled from San Diego to Exportadora's Guerrero Negro facility. Exportadora drove them from San Diego to the Tijuana airport and then flew them from there to Guerrero Negro on its own airplane. For the return trip, Exportadora's plane was unavailable. It chartered another plane from Aviones de Sonora, S.A., a Mexican corporation, to fly the travelers back from Guerrero Negro to Tijuana.
 
 
 3
 On that flight back, fog at Tijuana necessitated an instrument landing approach to the Tijuana airport. Such an approach requires an airplane to fly into United States airspace in order to land from the west. The plane failed to maintain a sufficient altitude and crashed short of the Tijuana airport, in United States territory near the Mexican border, killing all aboard. The plaintiffs in this action are the survivors of five travelers killed in the crash. Each group of survivors brought a separate action, two of them in state court. The state court actions were removed to federal court. See 28 U.S.C. Sec. 1441(d) (removal of civil actions against foreign states).[1] Once all five actions were in federal court, the district court consolidated them.
 
 
 4
 The five travelers made the trip to Guerrero Negro for different purposes. Ramon Schoenberg and Manuel Hernandez, both California residents, worked for a pump manufacturer and traveled to Guerrero Negro to solicit business. Hideo Omachi, a resident of Japan, was a purchasing agent for a Japanese company. Katsuo Sugimoto and Yoshihito Kodani, also residents of Japan, were representatives of Tottori University in Japan and were visiting an agricultural experiment in Guerrero Negro adjacent to Exportadora's salt production facility.
 
 
 5
 Exportadora moved to dismiss the suit, claiming sovereign immunity under the Foreign Sovereign Immunities Act (FSIA). The district court's denial of that motion was entered on July 7, 1989, and Exportadora timely appealed. As the action continued, Exportadora moved for partial summary judgment, claiming that the laws of Mexico apply to this case. The district court denied that motion, but granted permission to appeal pursuant to 28 U.S.C. Sec. 1292(b), having determined that the choice of law issue "involves a controlling question of law as to which there is substantial ground for difference of opinion." This court granted permission to appeal the choice of law issue by order of January 18, 1990, and consolidated that appeal with Exportadora's appeal of the denial of its motion to dismiss.
 
 II
 
 6
 We first consider whether Exportadora is immune from this lawsuit in United States courts, depriving the district court of jurisdiction. Because Exportadora made its motion to dismiss on the grounds that sovereign immunity applied, the denial of that motion is an appealable interlocutory order under the collateral order doctrine. Compania Mexicana de Aviacion, S.A. v. United States Dist. Court, 859 F.2d 1354, 1358 (9th Cir.1988) (per curiam).
 
 
 7
 The existence of subject matter jurisdiction is a question of law reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We accept the district court's factual findings on jurisdictional issues unless they are clearly erroneous. Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir.1989).
 
 
 8
 Congress has declared that foreign states "shall be immune from the jurisdiction of the courts of the United States and of the States" unless an exception applies. 28 U.S.C. Sec. 1604. The relevant exceptions to which plaintiffs point are the "commercial activity" and the "noncommercial tort" exceptions. "Once the plaintiff offers evidence that an FSIA exception to immunity applies, the party claiming immunity bears the burden of proving by a preponderance of the evidence that the exception does not apply." Joseph v. Office of the Consulate General of Nigeria, 830 F.2d 1018, 1021 (9th Cir.1987), cert. denied, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988).
 
 
 9
 The commercial activity exception of the FSIA provides that a foreign state is not immune from suit in any case
 
 
 10
 in which the action is based upon a commercial activity carried on in the United States by the foreign state;or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere;
 
 
 11
 or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
 
 
 12
 28 U.S.C. Sec. 1605(a)(2). If the commercial activity exception does not apply, we then look to the noncommercial tort exception. 28 U.S.C. Sec. 1605(a)(5).
 
 
 13
 Our analysis begins with the first clause of the commercial activity exception, which the district court concluded controls the immunity claim in this case. If we conclude that plaintiffs based their action on commercial activity of Exportadora in the United States in transporting decedents on the ill-fated flight, there is no immunity.
 
 
 14
 The FSIA requires two components for this exception to apply: (1) that the foreign entity be engaged in commercial activity, and (2) that that commercial activity have "substantial contact with the United States." 28 U.S.C. Sec. 1603(e); see Compania Mexicana, 859 F.2d at 1360 (must be a "significant 'nexus' " between cause of action and commercial activity).
 
 A. Commercial Activity
 
 15
 "A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. Sec. 1603(d); see Joseph, 830 F.2d at 1023; see generally International Ass'n of Machinists and Aerospace Workers v. OPEC, 649 F.2d 1354, 1357 n. 6 (9th Cir.1981) (discussing nature and purpose), cert. denied, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). The district court concluded that transporting people to and from Exportadora's plant, by its nature, constituted commercial activity.
 
 
 16
 In our review of that conclusion, we must focus on what is the nature of a corporation's transporting people from one place to another. "An activity is public and 'noncommercial' if it is one which only a sovereign state can perform." Joseph, 830 F.2d at 1024. But it is commercial if it "is of the type an individual would customarily carry on for profit." Letelier v. Republic of Chile, 748 F.2d 790, 797 (2d Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).
 
 
 17
 The district court did not clearly err in finding that Exportadora arranged the transportation of the decedents to and from Guerrero Negro and transported them. Arranging transportation and transporting people is not an act that "only a sovereign can perform." Exportadora engaged in commercial activity in arranging transportation for its prospective business partners, Schoenberg, Hernandez and Omachi; bringing them to Guerrero Negro facilitated potential commercial dealings. As for the university representatives, Sugimoto and Kodani, Exportadora arranged transportation for them at the behest of its majority stockholder, the Mexican government. Appeasing one's majority stockholder is an activity that a private entity can perform and benefits future commercial dealings in other contexts by maintaining goodwill. Exportadora has failed to show why such an act is not commercial in nature.
 
 
 18
 Exportadora's contention that the transportation of Sugimoto and Kodani, the university representatives, was public in nature and therefore sovereign activity is unpersuasive. Exportadora argues that the agricultural experiment site, for which Sugimoto and Kodani were bound, constituted public activity--namely, government-sponsored research. It analogizes to Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371 (5th Cir.1980). In that case, two vacationers flew from the United States to the Dominican Republic via Dominicana, the wholly government-owned airline of the destination country. Upon arrival in the Dominican Republic, however, the Arangos were denied entry as "undesirable aliens" and the Dominican government ordered the airline to fly them out of the country. The Arangos sued, claiming damages from the inconvenience of their return-trip odyssey. Id. at 1373. The Fifth Circuit held that sovereign immunity applied to Dominicana, because the government "impressed" it into service to carry out a sovereign function, enforcing immigration laws. Id. at 1379.
 
 
 19
 Arango is distinguishable. Here, the Mexican government did not order Exportadora to assist it in carrying out a sovereign function, as the Dominican government had in Arango. Instead, the Mexican government requested that Exportadora make its transportation link available. There was no impressment here. The fact that Sugimoto and Kodani had a public "purpose" at their destination is irrelevant; the inquiry is into the nature of the activity, not its purpose. 28 U.S.C. Sec. 1603(d). The activity was transportation, which Exportadora undertook to appease its majority stockholder. Exportadora's acquiescence in the request helped maintain goodwill with its majority stockholder, which is not an inherently public act. The district court correctly concluded that this transportation was commercial activity.
 
 
 20
 B. Substantial Contact with the United States
 
 
 21
 "A 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having substantial contact with the United States." 28 U.S.C. Sec. 1603(e).
 
 
 22
 Exportadora, defining the relevant activity as the Guerrero Negro-to-Tijuana return air segment, argues that there is no significant nexus with the United States. Plaintiffs, on the other hand, define the activity as round-trip transportation from and to San Diego. Defining the scope of the relevant conduct takes us far in determining the result. See Machinists and Aerospace Workers, 649 F.2d at 1357 ("A critical step in characterizing the nature of a given activity is defining exactly what that activity is. The immunity question may be determined by how broadly or narrowly that activity is defined.").
 
 
 23
 The district court found that Exportadora maintained a regular air-and-auto link between its San Diego and Guerrero Negro offices as part of its commercial operations, that it arranged, through its San Diego office,[2] round-trip transportation for the decedents from San Diego to Guerrero Negro and that all five decedents began their trips to Guerrero Negro in San Diego. These findings of fact are not clearly erroneous. Given these findings, the district court correctly concluded that the relevant activity was the round trip. The decedents did not make arrangements for legs of the trip separately. They made round-trip arrangements through the San Diego office at the outset, so we consider the arranged travel as a whole.
 
 
 24
 Thus framed, this case is similar to Sugarman v. Aeromexico, Inc., 626 F.2d 270 (3d Cir.1980). In that case, involving a tort in Mexico allegedly committed against an American passenger, the Third Circuit held that a government-owned airline was subject to federal court jurisdiction because the passenger bought his ticket in the United States and began his round trip there. Those facts constituted commercial activity in the United States. Similarly, in this case, decedents arranged their round-trip in the United States for departure from and return to the United States. The fact that the transportation was arranged through the San Diego office and the trip began in that city provides a sufficient nexus with the United States. See id. at 273; Barkanic v. General Admin. of Civil Aviation of the Peoples Republic of China, 822 F.2d 11, 13-14 (2d Cir.) (travel in China arranged in United States), cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987).
 
 
 25
 Exportadora slices the San Diego-Guerrero Negro journey in segments, arguing that the San Diego-Tijuana leg, and therefore its activity in the United States, ended when its van crossed the border into Mexico en route to the Tijuana airport for the outbound journey to Guerrero Negro. In support, Exportadora relies on Compania Mexicana de Aviacion, S.A. v. United States District Court, 859 F.2d 1354 (9th Cir.1988) (per curiam), which involved an airplane crash of a flight wholly within Mexico. In that case, plaintiffs' decedents traveled on tickets obtained in Mexico for a voyage within Mexico, but plaintiffs tried to invoke the commercial activities exception because the plane had been serviced in Chicago the day before the accident and the flight was scheduled to terminate eventually in Los Angeles after two stops in Mexico. We rejected the argument, holding that the only relevant act in the United States--the servicing--did not provide a significant nexus with the lawsuit. Id. at 1360. In this case, though, the fact that the trip was arranged in the United States to begin in and return to the United States provides the necessary nexus.
 
 
 26
 Because we hold that the first clause of the commercial activity exception applies, precluding sovereign immunity in this case, we need not address the other two clauses of Sec. 1605(a)(2) or the noncommercial tort exception in Sec. 1605(a)(5).[3]
 
 III
 
 27
 Exportadora also contends that the district court erred in concluding that California law applies to these actions. Jurisdiction to review the district court's choice of law determination rests on 28 U.S.C. Sec. 1292(b). The district court's choice of law decision is reviewed de novo. Harris v. Polskie Linie Lotnicze, 820 F.2d 1000, 1001 (9th Cir.1987).
 
 
 28
 The choice of law inquiry has two levels. First, we must determine whose choice of law rules govern. Second, applying those rules, we determine whose law applies. On the first level, either California or federal common law choice of law rules control. On the second level, Exportadora claims that Mexican law, which limits damages, should apply, while plaintiffs argue for the application of California law, which does not limit recovery.
 
 
 29
 A. Whose Choice of Law Rules Apply?
 
 
 30
 The parties did not dispute before the district court that California's choice of law rules would apply to this action. Their position was incorrect. Although the general rule is "that a federal court sitting in diversity applies the conflict-of-law rules of the state in which it sits," Harris, 820 F.2d at 1002 (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)), jurisdiction in this case is based on FSIA, not diversity. Id. Therefore, federal common law applies to the choice of law rule determination. Id. at 1003; Liu v. Republic of China, 892 F.2d 1419, 1425-26 (9th Cir.1989) (analyzing doctrine of respondeat superior to determine if jurisdictional immunity exception applied), cert. dismissed, --- U.S. ----, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990). Federal common law follows the approach of the Restatement (Second) of Conflict of Laws (1969). Harris, 820 F.2d at 1003-04.
 
 
 31
 Exportadora claims that it is too late to contend that the federal common law rule applies because plaintiffs did not so argue before the district court, citing the general rule that a court of appeals does not consider for the first time an issue not raised in the trial court. See Union Pac. R.R. v. Johnson, 249 F.2d 674, 677 (9th Cir.1957). That argument fails, though, because the relevant issue is whose law applies, and Exportadora itself raised that. The question of whose rules apply in deciding whose law applies is predicate to the ultimate decision. Because the ultimate issue--whose law applies--was raised in the district court, this court, in exercising our de novo review on that ultimate issue, must evaluate whatever steps are necessary to decide the issue.
 
 
 32
 B. Whose Law Applies?
 
 
 33
 Following the Second Restatement approach, there is "a presumption that the law of the place where the injury occurred applies." Harris, 820 F.2d at 1003-04. The relevant Restatement section provides:
 
 
 34
 In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in Sec. 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
 
 
 35
 Restatement (Second) of Conflict of Laws Sec. 175 (1969) (quoted in Harris, 820 F.2d at 1004 n. 3). In this case, the injuries occurred in California, where the plane crashed. Under the Second Restatement approach, California law should apply unless Mexico has "a more significant relationship ... to the occurrence and the parties." Id.
 
 
 36
 Factors to consider in the "more significant relationship" test include:
 
 
 37
 (a) the needs of the interstate and international systems,
 
 
 38
 (b) the relevant policies of the forum,
 
 
 39
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 
 
 40
 (d) the protection of justified expectations,
 
 
 41
 (e) the basic policies underlying the particular field of law,
 
 
 42
 (f) certainty, predictability and uniformity of result, and
 
 
 43
 (g) ease in the determination and application of the law to be applied.
 
 
 44
 Id. at Sec. 6(2) (quoted in Harris, 820 F.2d at 1004 n. 4).[4] Applying these factors, we conclude that Mexico does not have a more significant relationship to this suit than California, the place of injury. Mexico's policy is to limit the liability of its resident defendants in wrongful death actions. Hurtado v. Superior Court, 11 Cal.3d 574, 583, 522 P.2d 666, 671, 114 Cal.Rptr. 106, 111 (1974). California's rule allowing full recovery serves two policies: (1) providing full compensation for the survivors of its residents, id. at 584, 522 P.2d at 672, 114 Cal.Rptr. at 112, and (2) deterring wrongful conduct within its borders, "said interest extending to all persons present within its borders." Id. (emphasis added).[5] Given those competing policies, we cannot say that Mexico has a more significant relationship to this litigation. Applying California law in this case "furthers the choice-of-law values of certainty, predictability and uniformity of result and ... ease in the determination and application of the applicable law." Restatement (Second) of Conflict of Laws Sec. 175 comment d; see Harris, 820 F.2d at 1004 (applying law of place of injury, under Second Restatement analysis, in suit arising out of airplane crash).[6] The district court's determination that California law applies is affirmed.IV
 
 
 45
 The district court correctly determined that sovereign immunity does not apply to the defendants in this case. Although it followed the wrong path in deciding the choice of law issue, it correctly concluded that California law applies.
 
 
 46
 AFFIRMED.
 
 
 
 *
 The Honorable David F. Levi, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 Exportadora is considered an "agency or instrumentality of a foreign state" under 28 U.S.C. Secs. 1603(a) & 1603(b)(2), because Mexico owns a majority ownership interest in it
 
 
 [2]
 Exportadora claims that the decision to approve the trip could only have been made at Guerrero Negro and that the San Diego office was merely a conduit for communicating the decision. That contention is immaterial; the San Diego office was involved in arranging the trip, no matter where the decisions were made
 
 
 [3]
 Exportadora also claims that its responsibility for the safety of the five travelers ended when its plane was unavailable for the return flight to Tijuana and it instead chartered another aircraft. This contention goes to the merits of plaintiffs' tort claims, not to the subject matter jurisdiction question of immunity. Whether Exportadora, having arranged for round-trip transportation to the United States, retained a duty to the travelers to transport them safely, or whether Exportadora is vicariously liable for alleged negligence of the charter pilot, are ultimately questions of tort liability. We express no view as to whether Exportadora ought ultimately to prevail on its tort defenses before the district court. At this point, we consider only the jurisdictional claim and Exportadora's tort arguments are not relevant to that inquiry
 
 
 [4]
 This list is not exclusive. Restatement (Second) of Conflict of Laws Sec. 6 comment c
 
 
 [5]
 "It is also abundantly clear that a cause of action for wrongful death without any limitation as to the amount of recoverable damages strengthens the deterrent aspect of the civil sanction: 'the sting of unlimited recovery ... more effectively penalize[s] the culpable defendant and deter[s] it and others similarly situated from such future conduct.' " Hurtado, 11 Cal.3d at 584, 522 P.2d at 672, 114 Cal.Rptr. at 112 (quoting Seidelson, The Wrongful Death Action, 10 Duq.L.Rev. 525, 528 n. 12 (1972))
 
 
 [6]
 This case is not one of "those relatively rare situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties." Restatement (Second) of Conflict of Laws Sec. 175 comment d. California's interests and policies in protecting the safety of its airspace and in providing full compensation to its residents are implicated