**Ramiro ARANGO and Gabriella Arango, Individually, etc., et al., Plaintiffs-Appellants,**

**v.**

**GUZMAN TRAVEL ADVISORS CORPORATION, etc., et al., Defendants-Appellees.**

No. 79–1280.

United States Court of Appeals, Fifth Circuit.

July 25, 1980.

Rollo E. Karkeet, Coral Gables, Fla., Ramiro Arango, pro se, for plaintiffs-appellants.

Shaw, Pittman, Potts & Trowbridge, Matias F. Travieso-Diaz, James M. Burger, Washington, D. C., for defendants-appellees.

Before GOLDBERG, GARZA and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiffs-appellants, Ramiro Arango and his family, attack the district court's dismissal of their tort and breach of contract claims against appellee, Compania Dominicana de Aviacion ("Dominicana"), the national airline of the Dominican Republic. Dominicana, one of four defendants against whom suit had originally been filed in a Florida state court, had removed the claims to federal district court pursuant to 28 U.S.C. § 1441(d). We conclude that § 1441(d) operated to remove the claims against the remaining state court defendants, as well, and, consequently, that the order dismissing Dominicana, alone, did not constitute a final judgment appealable under 28 U.S.C. § 1291 because it failed to adjudicate the rights and liabilities of all parties properly before the court. Fed.R. Civ.P. 54(b). Therefore, we dismiss the appeal.

The Arangos' claims arose from the events of an abortive package vacation tour from Miami, Florida to the Dominican Republic. The Arangos' jaunt terminated abruptly and prematurely when Dominican immigration officials denied them entry into that country upon their arrival at the airport in Santo Domingo, apparently because of their inclusion on an official list of "undesirable aliens." The officials then compelled the Arangos' immediate, "involuntary re-routing" back to the United States via Dominicana, the air carrier on which they had arrived. Because of the unavailability of immediate return flights directly to Miami, the requirement that the Arangos leave the country resulted in their being shunted first to San Juan, Puerto Rico, and the next day to Port-au-Prince, Haiti, where they apparently were left to arrange and pay for their own return to Miami, which they finally were able to accomplish four days later.

Based on the non-performance of the vacation contract and the sundry injuries and inconveniences suffered in their "involuntary re-routing", the Arangos brought suit in state court against four defendants, all alleged to have collaborated in the marketing and formation of the package tour so as to create a joint venture for purposes of the action arising therefrom: Guzman Travel Advisors Corp., a Florida corporation and the actual purveyor of the package tour;

Trailways Travel & Tourism International Corp., also a Florida corporation and the tour organizer; Sheraton Hotels & Inns, World Corp., a foreign corporation whose local hotel was to provide food and lodging; and the appellee here, Dominicana, which was to provide air transportation and "tourist cards" necessary for entering the Dominican Republic and which had been responsible for the Arangos' carriage during their "re-routing" to the United States. Wholly owned by the Dominican government, Dominicana exercised its prerogative under the relevant provisions of the Foreign Sovereign Immunities Act of 1976 ("FSIA") as a "foreign state," 28 U.S.C. § 1603,[1] to remove the action to federal district court pursuant to 28 U.S.C. § 1441(d).[2] Once in federal court, Dominicana moved to dismiss the action under Fed.R.Civ.P. 12(b)(1), (6), arguing first, that as a foreign sovereign, it was immune from the jurisdiction of the court under the pertinent provisions of the FSIA, 28 U.S.C. §§ 1604–07; and second, that the Arangos' complaint stated no claim upon which relief could be granted because all alleged injuries derived from the official acts of Dominican immigration authorities, which acts are insulated from judicial scrutiny in United States courts by the "act of state" doctrine. Without specifying upon which ground it relied, the district court granted the motion and dismissed the suit against Dominicana.

## I. APPEALABILITY OF THE ORDER

■ The question that must precede review of the order of dismissal as to Domini-

cana is whether that order is at this point a final judgment within our appellate jurisdiction, 28 U.S.C. § 1291. Though neither party raised the issue of appealability, it is axiomatic that this court may, indeed must, undertake such a jurisdictional inquiry *sua sponte.* *Oswalt v. Scripto, Inc.,* 616 F.2d 191, 192 (5th Cir. 1980).

■ The basis for our concern here is whether the order dismissing the suit with respect to Dominicana disposed of all parties before the district court. Ordinarily, under Fed.R.Civ.P. 54(b) an order, however designated, that adjudicates the rights and liabilities of fewer than all parties is not final or appealable under § 1291 unless the district court "certifies" appealability by making an express determination that there is no just reason for delay and then explicitly directs the entry of judgment on the order. *Oswalt v. Scripto, Inc.,* 616 F.2d at 194; *Huckeby v. Frozen Food Express,* 555 F.2d 542, 545–46 (5th Cir. 1977). *See Curtiss-Wright Corp. v. General Electric Co.,* — U.S. —, 100 S.Ct. 1460, 1465–67, 64 L.Ed.2d 1 (1980) (guidelines for issuance of rule 54(b) "certificate"). This principle applies even to dismissals based on jurisdictional or immunity grounds not pertinent to the rights and liabilities of the remaining parties. *See, e. g., Morrison v. City of Baton Rouge,* 614 F.2d 77 (5th Cir. 1980); *Cason v. Owen,* 578 F.2d 572, 573–74 (5th Cir. 1978); *Huckeby v. Frozen Food Express,* 555 F.2d at 545–49.

Since Dominicana was the sole proponent and subject of the dismissal order and since

---

1. 28 U.S.C. § 1603 provides, in pertinent part:
   For purposes of this chapter—
   (a) A "foreign state" . . . includes . . . an agency or instrumentality of a foreign state as defined in subsection (b).
   (b) An "agency or instrumentality of a foreign state" means any entity—
      (1) which is a separate legal person, corporate or otherwise, and
      (2) which is an organ of a foreign state or political subdivision thereof, *or a majority of whose shares or other ownership interest is owned by a foreign state* or political subdivision thereof, and
      (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under

the laws of any third country. (emphasis added).

2. 28 U.S.C. § 1441(d) provides:
   (d) Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

no rule 54(b) "certificate" accompanied that order, our inquiry is directed merely to whether or not there were any other parties properly before the court. This ordinarily simple question is complicated here by the uncertain scope of removal under § 1441(d). If only the claims against Dominicana were removed to federal court, the order dismissing Dominicana obviously was final. If, on the other hand, Dominicana's § 1441(d) petition precipitated a removal of the entire case involving all defendants, the rights and liabilities of those other defendants have yet to be adjudicated, and, consequently, the dismissal of Dominicana is not yet final or appealable.

The district court, as well as the state court and all the parties involved, apparently understood the removal to have encompassed only the claims against Dominicana. Neither the record nor minutes of the federal proceeding reflect any filings by any of the other three defendants or any judicial recognition of their presence.[3] The state court proceeded with the claims against the supposedly remaining defendants, and, in fact, later dismissed the action as to Sheraton and Trailways Travel.[4] Nonetheless, while the confusion of the parties and trial courts here is understandable—this appears to be a question of first impression—we are convinced that the better interpretation of § 1441(d) is that when a "foreign state" defendant in a multi-party suit removes under that provision, the entire action against all defendants accompanies it to federal court.

The language of § 1441(d) does not expressly address its operation in multi-party lawsuits. *Cf.* 28 U.S.C. § 1441(c) (explicitly providing for removal of "entire case" when otherwise removable claims are joined with a "separate and independent" non-removable claim). Nonetheless, its legislative history indicates a rather clear congressional intent that when a "foreign state," joined with other non-foreign codefendants in state court, petitions for removal, it is *the action*—embracing all defendants—that is to be transferred to federal court. The Report of the House Judiciary Committee in its section-by-section analysis of the FSIA, states that "[n]ew subsection (d) of section 1441 permits the removal of any such action at the discretion of the foreign state, *even if there are multiple defendants and some of these defendants desire not to remove the action or are citizens of the State in which the action has been brought.*" H.R.Rep. No. 94-1487, 94th Cong., 2d Sess. 32, *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 6604, 6631 (emphasis added) [hereinafter "H.R.Rep."]. *See also* 14 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3729 (Supp.1979).

Since § 1441(d) by its terms requires no defendant other than the "foreign state" to assent to or to join the removal petition, the desires as to removal and the citizenship of the non-foreign defendants obviously would be wholly irrelevant and would have warranted no comment by the Committee if the action with respect to them were not also to be removed. Further, by its explicit delineation of the immateriality of domestic, forum-state citizenship of some of the defendants, we are given a reflection of Congress' specific intent that removal of multi-party actions under the aegis of this limited new provision should not be susceptible to the general bar of 28 U.S.C. § 1441(b) against

---

**3.** Curiously, the Arangos did file requests for admissions, Fed.R.Civ.P. 36, directed to Guzman and Trailways Travel with the federal court. R. at 37, 41–42. No answers or further action on these requests, nor any recognition of them by the court, are indicated in the record, however.

**4.** Of course, as these two parties will no doubt be chagrined to learn, since we decide here that

the removal petition filed by Dominicana effected the removal of the entire action against all parties, all state proceedings in the case subsequent to that court's receipt of the removal petition, including these dismissals, are void. 28 U.S.C. § 1446(e); 1A MOORE'S FEDERAL PRACTICE ¶ 0.168[.3–8], at 515–16 (2d ed. 1979). *See, e. g., Heniford v. American Motors Sales Corp.*, 471 F.Supp. 328, 338 (D.S.C.1979).

removal of multi-party non-federal-question suits where any defendant is a citizen of the forum state. Thus, the strong inference from the statement quoted above is that Congress understood that a petition under § 1441(d) would effect the removal of the entirety of an action against multiple defendants, foreign or domestic.

The language of the section, though it does not compel this interpretation, certainly accommodates it nicely. Section 1441(d) provides for the removal of "civil actions," not simply claims, involving "foreign state" defendants. The same phrase in the remaining subsections of § 1441 [5] denotes the entirety of the proceedings in question, not merely those aspects involving discrete federal claims or parties. Section 1441(b), for example, provides that no "civil action," other than those based on federal questions, may be removed where there are multiple defendants and any one of them is a citizen of the forum state; the "civil action's" removability is determined as to its entirety, not as to particular claims or parties. *See also Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 560–61 (2d Cir. 1978), and 14 C. Wright, A. Miller & E. Cooper, *supra* § 3722 at 573 (pendent jurisdiction allows removal of entire case, federal and non-federal claims, under § 1441(a)).

Moreover, the same or similar language in other limited removal provisions, available only to particular types of defendants as is § 1441(d), has consistently been construed and applied to effect the removal of the entire action in multi-party suits. For instance, this court has previously held that when a federal officer exercises his prerogative under 28 U.S.C. § 1442(a)(1) to remove any "civil action" commenced against him in state court, the entire case against all defendants, federal and non-federal, is removed to federal court regardless of the wishes of his co-defendants. *Fowler v. Southern Bell Telephone & Telegraph Co.*, 343 F.2d 150, 152 (5th Cir. 1965). *Accord, e. g., Murphy v. Kodz*, 351 F.2d 163, 165–67 (9th Cir. 1965); *Bottos v. Avakian*, 477 F.Supp. 610, 611 n. 3 (N.D.Ind.1979); *Howes v. Childers*, 426 F.Supp. 358, 359 (E.D.Ky.1977). The same power of removal of the entire cause of action against all parties has been recognized in cases of removal of "civil actions" in tort against federal employees pursuant to 28 U.S.C. § 2679(d). 14 C. Wright, A. Miller & E. Cooper, *supra* § 3727, at 693. *See, e. g., Darnell v. Starks*, 258 F.Supp. 31 (D.Ore. 1966). Applications of other removal provisions are similarly consistent with our interpretation of § 1441(d). [6] *See Farina v. Mission Investment Trust*, 615 F.2d 1068 (5th Cir. 1980) (sanctioning removal of entire

---

**5.** The remainder of 28 U.S.C. § 1441, the general removal statute, provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with

one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

**6.** A substantial policy factor also favoring this interpretation is that removal of the entire action ordinarily will promote judicial economy. Particularly where, as here, the claims are commonly lodged against all defendants as a "joint venture" and all such claims arise from a single, interlocked series of transactions, see *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951), one would justifiably expect to litigate the merits of such claims in a single proceeding.

While the principal purpose of the FSIA was to provide a federal forum for the adjudication of assertions of foreign sovereign immunity, 28 U.S.C. § 1602, the federal hearing is not restricted to this issue but must proceed to the

action against all defendants in a suit removed by the FDIC pursuant to its sole prerogative provided in 12 U.S.C. § 1819(4)); *In re Franklin National Bank Securities Litigation v. Andersen*, 532 F.2d 842, 846 (2d Cir. 1976) (same).

■ From the foregoing, we conclude that Congress intended that § 1441(d), when invoked by a "foreign state" defendant, should operate to remove the entire action pending in state court against all defendants, private and domestic, as well as the foreign sovereign.[7] Accordingly, we find that when Dominicana removed the Arangos' claims against it to federal court under § 1441(d), it carried with it the remaining

---

merits when the foreign state is found not to be immune. If, under § 1441(d) all parties, "foreign state" and domestic, are considered to be removed to federal court, in those instances in which the foreign state is found not to be immune, the federal court may proceed to consider the merits of the claims against the domestic defendants, just as it is obliged to do with respect to the non-immune foreign state. *See, e. g., Outboard Marine Corp. v. Pezetel*, 461 F.Supp. 384 (D.Del.1978). Conversely, when the foreign sovereign is found to be immune and the source of federal removal jurisdiction is thereby withdrawn from the case, the district court is free to exercise its discretion to remand the remaining defendants to state court, and in most instances will no doubt do so. *See Overman v. United States*, 563 F.2d 1287, 1292 (8th Cir. 1977) (where claims against federal officer, who removed under § 1442(a)(1), were concluded, court strongly suggested use of discretionary remand as to non-federal defendants); *Brough v. United Steelworkers of America*, 437 F.2d 748, 750 (1st Cir. 1971) (suggesting remand of remaining parties after summary judgment eliminated independent federal jurisdictional base); *Murphy v. Kodz*, 351 F.2d at 167–78. *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (recognizing discretion to maintain or remand claims within the district court's pendent jurisdiction when federal jurisdictional basis drops out of case before substantial commitment of judicial resources). In either case, the merits of plaintiff's claims may be adjudicated in a single proceeding without a needless duplication of effort and resources.

7. The statute, so interpreted, does not entail an unconstitutional arrogation of power to the federal courts. Certainly, it is the conflict between a United States citizen and a foreign state that taps the power of Article III, § 2 ("The judicial Power [of the United States] shall extend . . . to Controversies . . . between a State, or Citizens thereof, and foreign States, Citizens, or Subjects."). Nonetheless, that power, once flowing, may also extend to closely related claims against other parties not independently susceptible to federal jurisdiction, pursuant to the same rationale that supports the exercise of "pendent party" jurisdiction, *see Aldinger v. Howard*, 427 U.S. 1, 18,

96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976), and the established principle that federal courts are constitutionally able (though, in most instances, not statutorily allowed) to entertain actions between several parties characterized by only "minimal diversity."—*i. e.*, "diversity of citizenship between two or more [adverse parties] without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967).

The rationale underscoring these concepts is that claims not themselves forming a basis for federal jurisdiction may, nonetheless, be within the ambit of the same Article III *"controversy"* as that giving rise to the federal claim, and therefore be within the federal judicial power over that entire controversy. The bounds of this approach in the situation before us presumably are the same or very similar to those provided by the Supreme Court, in *United Mine Workers of America v. Gibbs*, for Article III *"Cases . . ."* arising under the constitution [or] the laws of the United States" in its delineation of federal judicial power over pendent state claims; that is, the pendent claims and the claim activating federal jurisdiction "must derive from a common nucleus of operative fact" such that one "would ordinarily be expected to try them all in one judicial proceeding." 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See Boudreaux v. Puckett*, 611 F.2d 1028, 1030–31 (5th Cir. 1980) (applying *Gibbs* to pendent party question); *Ortiz v. United States Government*, 595 F.2d 65, 68–71 (1st Cir. 1979) (same). *See also, Aldinger v. Howard*, 427 U.S. at 20–22, 96 S.Ct. at 2423 (Brennan, J., dissenting; applying *Gibbs* to pendent party question). *But see Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 2402 n. 10, 57 L.Ed.2d 274 (1978) (assuming, without deciding, that *Gibbs* formulation accurately measures constitutional scope of "controversies," as well as federal question "cases," in pendent party situation). Certainly the claims against all defendants here fall neatly within this rationale, since all arose from the same acts or series of events surrounding the ill-fated vacation tour for which all defendants allegedly are commonly responsible as joint venturers.

parties in the state proceeding. Since Guzman, Trailways Travel and Sheraton were, therefore, properly before that court, the order of dismissal as to Dominicana did not adjudicate the rights and liabilities of all parties and, therefore, was not an appealable final judgment. Consequently, we hold that the Arangos' appeal of this dismissal must, itself, be dismissed for want of jurisdiction.[8]

Because some of the theories upon which the district court may have predicated its dismissal of Dominicana may also bear upon the disposition of claims against the other defendants and because rule 54(b) explicitly renders even the order dismissing Dominicana still subject to revision by the district court, we shall, in the interest of expediency, proceed to offer that court some guidance in its further handling of these issues.

## II. GROUNDS FOR DISMISSAL

### A. *Foreign Sovereign Immunity*

█ The first ground presented to the district court on which it may have relied[9] in dismissing the suit against Dominicana is the immunity accorded foreign sovereigns by the FSIA, 28 U.S.C. § 1604. Section 1604—which, of course, has no bearing on the ultimate disposition of the claims against the defendants other than Dominicana—provides a general grant of immunity to "foreign states," subject only to the exceptions delineated elsewhere in the FSIA, 28 U.S.C. §§ 1605–07. The burden of

establishing the applicability of this immunity naturally lay with the one claiming it, Dominicana. H.R.Rep. at 17; *Behring International, Inc. v. Imperial Iranian Air Force*, 475 F.Supp. 396, 405 & n. 9 (D.N.J. 1979). Since Dominicana, wholly owned by the Dominican government, undisputedly is a "foreign state" as defined for purposes of the FSIA in § 1603(a), *supra* note 1, the only question is whether it demonstrated that the Arangos' claims did not lie within any exception specified in §§ 1605–07. H.R.Rep. at 17 (burden of proving non-applicability of specified exceptions lies with foreign state). We do not believe Dominicana shouldered this aspect of its burden with respect to the entirety of the Arangos' actions against it.

Section 1605(a)(2) provides an exception to the blanket grant of immunity in § 1604 for actions "based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere . . . ." Dominicana has admitted before the district court, in its Memorandum in Support of its Motion to Dismiss, that its airline operations, including sales of tickets and "tourist cards," carried on in the United States constitute such acts and "commercial activity" as would trigger § 1605(a)(2). R. at 99. *See* 28 U.S.C. § 1603(d), (e) (defining relevant "commercial activity").[10] It argues, however, that § 1605(a)(2) is inapplicable because the Ar-

8. Appellee, Dominicana, urges us to accept the appeal under the "collateral order doctrine" articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). However "[t]o come within the 'small class' of decisions excepted from the final judgment rule by *Cohen*, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, *and be effectively unreviewable on appeal from a final judgment.*" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (emphasis added). The *Cohen* doctrine, which should be strictly construed, is unavailing here since, aside from any questions as to the other criteria, the order of

dismissal as to Dominicana can be adequately reviewed upon appeal from a judgment disposing of all parties. *In re Corrugated Container Antitrust Litigation*, 614 F.2d 958, 961 (5th Cir. 1980); *Huckeby v. Frozen Food Express*, 555 F.2d at 549 (denying appealability under *Cohen* doctrine of order dismissing one defendant in a multi-party suit where no one would be "irretrievably injured should immediate appellate review be withheld").

9. As noted above, the district court did not specify the grounds for its order of dismissal.

10. 28 U.S.C. § 1603(d) & (e) provide:
   (d) A "commercial activity" means either a regular course of commercial conduct or a

angos' claims arise not from this commercial activity, but from the acts of Dominican immigration officials in expelling the Arangos from the Dominican Republic and from the events of the non-commercial, "involuntary re-routing" of the Arangos in which Dominicana was compelled by those authorities to participate. With respect to certain of the Arangos' claims, this is true, but as to others it is not.

Two counts of the Arangos' complaint allege false imprisonment and battery stemming from the Arangos' being forcibly placed on board the Dominicana flight from Santo Domingo to San Juan, Puerto Rico by Dominican immigration officers, with the aid of Dominicana employees, in connection with the Arangos' "involuntary re-routing", and from their allegedly being man-handled during this procedure. In accordance with its argument, above, Dominicana is not answerable to these tort claims. The focus of the exception to immunity recognized in § 1605(a)(2) is not on whether the defendant generally engages in a commercial enterprise or activity, as an airline such as Dominicana unquestionably does; rather, it is on whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character. *Yessenin-Volpin v. Novosti Press Agency*, 443 F.Supp. 849, 855–56 (S.D.N.Y. 1978) (holding generally commercial Soviet news agencies immune for allegedly libellous story produced for official Soviet state publications); *see International Association of Machinists and Aerospace Workers v. OPEC*, 477 F.Supp. 553, 568–69 n. 14 (C.D. Cal.1979).

Dominicana's actions in connection with the "involuntary re-routing" were not commercial. Dominicana was impressed into service to perform these functions, for which it apparently was not compensated, by Dominican immigration officials pursuant to that country's laws. Dominicana acted merely as an arm or agent of the Dominican government in carrying out this assigned role, and, as such, is entitled to the same immunity from any liability arising from that governmental function as would inure to the government, itself. *See Papagianakis v. SAMOS*, 186 F.2d 257, 261–62 (4th Cir. 1950), *cert. denied*, 341 U.S. 921, 71 S.Ct. 741, 95 L.Ed. 1354 (1951) (similarly recognizing derivative sovereign immunity for private vessel owners and crew against false imprisonment claim stemming from their incarceration of plaintiffs on board the vessel pursuant to orders from United States immigration officials). *See also Peterson v. Weinberger*, 508 F.2d 45, 51–52 (5th Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975) (one who acts as Medicare agent for HEW is cloaked in HEW's governmental immunity).

Arangos' complaint also, however, stated claims for breach of warranty and contract based on the miscarriage and non-performance of the vacation tour and the apparent failure of defendants to refund the price paid for the tour. It further alleged that, because Dominicana knew of the official list of undesired foreigners forbidden to enter the Dominican Republic and because of its high duty of care as a common carrier, Dominicana was negligent in arranging the Arangos' vacation air transportation without ascertaining whether they would even be allowed to enter the Dominican Republic for the purpose of that vacation, or without at least warning them of the potential danger of exclusion based on that list and its attendant costs and consequences. Each of these claims, and the duties alleged therein to have been breached, arose directly from

---

particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

(e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

or in connection with the marketing and execution of contracts—*i.e.*, the sale of airline tickets and "tourist cards" necessary to enter Dominican Republic—by Dominicana, along with the other defendants, in the normal course of its airline business in the United States. Consequently, while these claims may eventually fail for other reasons, they plainly stem from Dominicana's "commercial activity" in the United States and are, therefore, not barred by foreign sovereign immunity. *See United Euram Corp. v. U.S.S.R.*, 461 F.Supp. 609 (S.D.N.Y. 1978) (holding no immunity for breach of contract for sale of service); *National American Corp. v. Federal Republic of Nigeria*, 448 F.Supp. 622 (S.D.N.Y.1978), *aff'd*, 597 F.2d 314 (2d Cir. 1979).

### B. *Act of State Doctrine*

■ The second theory proffered to the district court as grounds for dismissal was the act of state doctrine. "The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity [or legality] of the public acts a recognized foreign sovereign power [has] committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964). Relegating grievances from acts of this sort to executive channels of international diplomacy, the rule is an embodiment of the deference to be accorded the sovereignty of other nations; it averts potential diplomatic embarrassment from the courts of one sovereign sitting in judgment over the public acts of another. *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 697, 96 S.Ct. 1854, 1862, 48 L.Ed.2d 301 (1975); *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 85, 42 L.Ed. 456 (1897).

■ Unlike foreign sovereign immunity, the act of state doctrine affects the viability of the Arangos' claims against all the defendants. It does not simply relieve the foreign government of liability for its acts, but operates as an issue preclusion device, foreclosing judicial inquiry into the validity or propriety of such acts in litigation between any set of parties. *National American Corp. v. Federal Republic of Nigeria*, 448 F.Supp. at 640; *see, e. g., Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977) (foreclosing antitrust conspiracy suit against private oil companies that would have required inquiry into alleged untoward motives behind Libya's nationalization of its oil industry). Consequently, the Arangos' battery and false imprisonment claims would be foreclosed under this doctrine, as well as under the FSIA, since they would, by definition, require an adjudication of the propriety and legality of the acts of the Dominican immigration authorities—and, more specifically, of Dominicana employees while effectively deployed as agents of that government under the orders of these authorities—in the performance of their official governmental duties in denying the Arangos' entry into the Dominican Republic and effecting their removal. *See Underhill v. Hernandez*, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897) (foreclosing suit under act of state doctrine against foreign agent who detained American citizen); *United States v. Henry*, 604 F.2d 908, 912 (5th Cir. 1979) (characterizing exclusion of aliens as a sovereign governmental act).

■ Dominicana urges that, beyond this, since the Arangos' expulsion by Dominican authorities was the precipitating factor for all plaintiffs' claims, all should be foreclosed by the act of state doctrine. This contention accords that doctrine too great a breadth. The act of state doctrine only precludes judicial inquiry into the legality, validity, and propriety of the acts and motivations of foreign sovereigns acting in their governmental roles within their own boundaries;[11] it does not preclude judicial resolution of all commercial conse-

---

11. Dominicana's sale of airline tickets and tourist cards to the Arangos and its activities and omissions in connection therewith, which took place wholly in the United States, are not "acts

quences stemming from the occurrence of such public acts. *See National American Corp. v. Federal Republic of Nigeria*, 448 F.Supp. at 639–40. The Arangos' contract and negligence claims require only a determination of the respective rights and duties of the parties in the wake of the sovereign acts of the Dominican immigration authorities. The claims raise the questions of who bears the risk of loss following such an incident and whether there existed a duty on the part of any defendant to protect the Arangos from, or to warn of, the possibility of its occurrence. They do not necessitate a consideration or evaluation of the legitimacy of those "acts of state", themselves. Consequently, the act of state doctrine, like the FSIA, should not have required dismissal with respect to the Arangos' contract and negligence claims.

## C. *Legal Sufficiency of Claims*

Finally, though they did not present the question to the district court, the parties have alluded on appeal to whether, independent of the preclusive effects of foreign sovereign immunity and the act of state doctrine, the Arangos have alleged facts presenting a legally cognizable claim. Keeping in mind that a complaint is to be liberally construed in favor of the plaintiff on a motion to dismiss for failure to state a claim, *Voter Information Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 210 (5th Cir. 1980), we believe that a claim has been stated.

▮ Under the law of Florida, the state in which the contract for air transportation was executed and in which performance commenced, a common carrier such as Dominicana "is required to exercise the highest degree of care, *foresight*, prudence, and diligence" toward its passengers. *Edwards v. Jacksonville Coach Co.*, 88 So.2d 543, 544

(Fla.1956) (emphasis added). This has been specifically construed to include a duty to warn a passenger, upon the purchase of a ticket, of potential dangers from third parties at the point of arrival. *Werndli v. Greyhound Corp.*, 365 So.2d 177, 178 (Fla. App.1978) (failure to warn that bus terminal at destination was in high crime area and would be locked upon arrival stated cause of action against carrier for injuries received at destination at hands of third parties).

In a case closely analogous to this one, the First Circuit in *Compagnie Nationale Air France v. Castano*, 358 F.2d 203, 208–09 (1st Cir. 1966), ruled that where an international air carrier failed to warn a passenger, upon his purchase of a ticket, that he would be prevented by immigration officials from entering the country of his destination unless he had a proper visa, that carrier would be liable for all damages and injuries proximately flowing from the passenger's exclusion from that country due to his failure to secure a visa.

▮ Dominicana has admitted that it was aware of the list of undesired foreigners and, in fact, had previously transported individuals who had been denied entry into the Dominican Republic on the basis of that list. R. at 76–77. Without attempting to define all possible grounds of recovery by the Arangos, we can see now that if they can demonstrate either (1) that Dominicana, with the foregoing knowledge, sold them "tourist cards" upon the false assertion that these cards, alone, would assure their entry into the country, or (2) that Dominicana had access to the list, knew or should have known the Arangos' names were on it, and therefore, that the object of their vacation contract was impossible, yet proceeded to arrange for their vacation air transportation, a cognizable claim will have

---

of state" insulated under the doctrine. *Cf. Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 695–706, 96 S.Ct. 1861–1866 (plurality of four Justices ruling that act of state doctrine does not apply to purely com-

mercial acts of a sovereign). *Accord, Hunt v. Mobil Oil Corp.*, 550 F.2d at 73; *Behring International, Inc. v. Imperial Iranian Air Force*, 475 F.Supp. at 401.

been proved. *See Dumas v. Town of Mt. Vernon*, 612 F.2d 974, 980 (5th Cir. 1980), *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief on his claim). Therefore, while there may be flaws in the Arangos' particular theories of recovery that may even be assailed subsequently on summary judgment, the complaint appears adequate to withstand a motion to dismiss.

For the reasons set forth in Section I of this opinion, the appeal is DISMISSED and the cause is REMANDED.