Lois FROLOVA, Plaintiff,

v.

UNION OF SOVIET SOCIALIST REPUBLICS, Defendant.

No. 82 C 3133.

United States District Court, N.D. Illinois, E.D.

Jan. 26, 1983.

Anthony D'Amato, Northwestern University School of Law, Chicago, Ill., for plaintiff.

Michael W. Coffield, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

The instant motion is before the court *sua sponte* to determine whether jurisdiction exists over the defendant Union of Soviet Socialist Republics ("Soviet Union"), and if so, whether this court should exercise that jurisdiction. For the reasons set forth below, this action must be dismissed.

1. 28 U.S.C. § 1330 provides:

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

Plaintiff Lois Frolova ("Frolova") brought this action against the Soviet Union for refusing to allow her husband to immigrate to the United States. Mrs. Frolova's claims essentially sound in tort for the loss of consortium occasioned by the Soviet Union's retention of her husband. Frolova contends that the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1330,[1] provides for subject matter and personal jurisdiction in this case. Specifically, she contends that the loss of consortium tort falls within 28 U.S.C. § 1605(a)(5) which provides an exception to sovereign immunity for tortious acts. Alternatively she contends that the Soviet Union has waived sovereign immunity in this case and jurisdiction is therefore allowed by 28 U.S.C. § 1605(a)(1).

A suit brought in a United States court against a foreign sovereign faces two potential obstacles: the doctrine of sovereign immunity and the act of state doctrine. The doctrine of sovereign immunity, recently codified in the FSIA, is considered to be a jurisdictional doctrine. *International Ass'n of Machinists v. OPEC*, 649 F.2d 1354 (9th Cir.1981). It recognizes, in a general sense, that a foreign sovereign will be immune from liability for its public acts. The doctrine arises from a mutual belief held by all nations that one sovereign will not and should not sit in judgment of the public acts of another. The act of state doctrine also stems from the need to respect the sovereignty of foreign states, but it is a doctrine of judicial restraint rather than a jurisdictional doctrine. *Id.* at 1359. It recognizes that the judicial branch should refrain from exercising its jurisdiction in sensitive foreign policy matters traditionally left to the executive branch. Thus, it has been said

(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

(c) For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605–1607 of this title.

that the act of state doctrine "recognizes not only the sovereignty of foreign states, but also the spheres of power of the co-equal branches of our government." *Id.* at 1359. Should either doctrine apply to the present case, the court's appropriate remedy is to dismiss the action. *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1378–81 (5th Cir.1980). *See also International Ass'n of Machinists v. OPEC,* 649 F.2d 1354, 1361 (9th Cir.1981) (dismissal is appropriate remedy where act of state doctrine applies).

## THE FOREIGN SOVEREIGN IMMUNITIES ACT

Traditionally, a foreign sovereign was immune from suit in United States courts regardless of the nature of the suit. *The Schooner Exchange v. M'Fadden,* 7 Cranch (11 U.S.) 116, 136, 3 L.Ed. 287 (1812). This theory of absolute sovereign immunity remained in force until 1952 when the now-famous Tate Letter was issued by the Department of State. The Tate Letter expressed a "restrictive" theory of sovereign immunity whereby a foreign sovereign retained immunity from suit for claims based on its public acts ("jure imperii"). A foreign state's private acts ("jure gestionis"), which included its commercial activities, would no longer be immune from suit.

This theory of restrictive sovereign immunity was adopted by the United States courts, but difficulties arose. There was confusion as to whether an act was public or private; there were problems with service of process and judgment execution; courts tended to decide questions of sovereign immunity based on State Department suggestions rather than treating the question of immunity as a purely judicial function. With these problems in mind, the United States Congress passed the Foreign Sovereign Immunities Act of 1976.

The FSIA was designed to accomplish four objectives. First, the bill codified the "restrictive" principle of sovereign immunity; immunity of a foreign state was thereby statutorily "restricted" to suits involving its public acts. H.R.Rep. No. 94–1487, 94th Cong., 2d Sess., 7 (1976) ("House Report"), U.S.Code Cong. & Admin.News 1976, p. 6604. Second, the bill insured that immunity would be strictly a judicial rather than an executive determination. *Id.* Third, the bill provided a statutory procedure for service of process on a foreign state. *Id.* at 8; 28 U.S.C. § 1608. Finally, the bill provided a remedy should the foreign state fail to pay any judgment rendered against it. 28 U.S.C. §§ 1610, 1611. In short, the FSIA gave United States citizens full access to the courts to resolve ordinary legal disputes involving a foreign state.

The FSIA begins with the general premise that a foreign state is immune from the jurisdiction of American courts and then creates exceptions to this general principle. House Report, *supra* at 17. These exceptions to an otherwise broad immunity are set forth in 28 U.S.C. § 1605. Generally speaking, the Act provides exceptions for cases dealing with waiver of immunity, admiralty cases, certain commercial transactions, cases concerning rights to immovable property situated in the United States, and actions based in tort.[2]

2. 28 U.S.C. § 1605 provides:
 (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
 (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
 (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
 (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with the commercial activity carried on in the United States by the foreign

The statutory language defining the scope of the tort exception provides that a foreign state shall not be immune from the jurisdiction of courts of the United States in:

[actions] in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

28 U.S.C. § 1605(a)(5). The tort immunity exception was cast in general terms to encompass all noncommercial tortious actions for money damages but was directed primarily at problems like the traffic accidents of foreign diplomats. *See generally,* House Report. Section 1605(a)(5) also requires that the tortious act or omission of the foreign state occur in the United States so as to satisfy the requisite jurisdictional contacts.

Plaintiff contends that the tort exception subjects the Soviet Union to liability for the consortium claim. There is no precedent to guide the court in its consideration of this novel theory. After reviewing the statute and its legislative history, however, it is this court's opinion that the FSIA was not designed to provide jurisdiction over a foreign sovereign in a case such as this. The Act specifically retained sover-

state; or that property or any property exchanges for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue; or

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

(b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: Provided, That—

(1) notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; but such notice shall not be deemed to have been delivered, nor may it thereafter be delivered, if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit—unless the party was unaware that the vessel or cargo of a foreign state was involved, in which event the service of process of arrest shall be deemed to constitute valid delivery of such notice; and

(2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in subsection (b)(1) of this section or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

Whenever notice is delivered under subsection (b)(1) of this section, the maritime lien shall thereafter be deemed to be an in personam claim against the foreign state which at that time owns the vessel or cargo involved: Provided, That a court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose, such value to be determined as of the time notice is served under subsection (b)(1) of this section.

eign immunity for the foreign state's public acts. The denial of immigration is a public act. Additionally, the tenor of the legislative history suggests that suits are to be allowed only for ordinary claims, such as contract or tort claims arising from the foreign states activities in the United States. This court believes that the consortium claim, which resulted from a public act, falls outside of this scope. The court need not, however, decide the FSIA issue [3] as it finds that the act of state doctrine clearly requires dismissal.

## THE ACT OF STATE DOCTRINE

 The act of state doctrine was established in the 1897 case of *Underhill v. Hernandez,* 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897), in which the Supreme Court held that:

> Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

168 U.S. at 252, 18 S.Ct. at 84. In *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), the Court articulated the act of state doctrine's modern rationale. Justice Harlan, writing for a majority of eight, described the doctrine as one arising "out of the basic relationships between branches of government in a system of separation of powers." 376 U.S. at 423, 84 S.Ct. at 937. The act of state doctrine therefore reflects general concern about the competency of the judiciary to decide questions in the area of foreign relations—an area the Constitution

commits primarily to the Executive Branch. 376 U.S. at 412, 423–24, 427–28, 84 S.Ct. at 931, 937–38, 939–40. In short, the act of state doctrine operates to preclude United States courts from ruling on the validity of foreign governmental acts so as not to hinder or embarrass the Executive Branch in its foreign policy endeavors. 376 U.S. at 427–28, 431–33, 84 S.Ct. at 939–40, 941–43; *International Ass'n of Machinists v. OPEC,* 649 F.2d 1354 (9th Cir.1981).

 The act of state doctrine was not abolished in *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976), as plaintiff would have this court believe. That portion of the *Dunhill* opinion which commanded a majority of the Court held the Cuban government liable merely because no act of state was present.

The issue before the Court in *Dunhill* was whether certain acts by the Cuban government constituted acts of state immune from suit in United States courts. 425 U.S. at 684, 96 S.Ct. at 1856. The disputed act was Cuba's refusal to return funds U.S. purchasers advanced for cigar shipments which were never delivered. The majority in *Dunhill* expressed no doubt as to the continuing validity of the act of state doctrine. It simply held the Cuban government liable for a purely commercial transaction because "nothing in the record [revealed] an act of state...." 425 U.S. at 690, 96 S.Ct. at 1859. The continuing validity of the act of state doctrine was also recognized by the dissenting opinion:

> [T]he act of state doctrine reflects the notion that the validity of an act of a foreign sovereign is, under some circumstances, a "political question" not cognizable in our courts.[4]

---

**3.** The plaintiff alternatively contends that the Soviet Union has impliedly waived its sovereign immunity. Essentially, plaintiff Frolova's claim is that waiver may be implied in this case from the fact that the Soviet Union violated international law as well as its own law. This court finds nothing in the caselaw or legislative history of the FSIA to support this novel and

unconvincing argument. Additionally, the state action doctrine, discussed below, precludes this court from determining the legality of the Soviet Union's actions.

**4.** 425 U.S. at 728, 96 S.Ct. at 1877 (Opinion of Marshall, J., dissenting in which Brennan, Stewart and Blackmun, JJ., join).

The split between the Justices in *Dunhill* does not concern the validity of the act of state doctrine, but whether the purely commercial actions of Cuba were state action requiring immunity. *See The Supreme Court, 1975 Term,* 90 Harv.L.Rev. 56, 265–75 (1976).

Similarly, there can be no doubt that the act of state doctrine survived the enactment of the FSIA. The Committee on the Judiciary, in enacting the FSIA, excluded the act of state doctrine from codification in the Act since "our courts already have considerable guidance enabling them to reject improper assertions of the act of state doctrine." House Report, *supra* at 20 n. 1. Additionally, court decisions since the enactment of the FSIA have continued to differentiate the jurisdictional FSIA and the act of state doctrine, a "prudential doctrine designed to avoid judicial action in sensitive areas." *International Association of Machinists v. OPEC,* 649 F.2d 1354, 1359 (9th Cir.1981). *See Hunt v. Mobil Oil Corp.,* 550 F.2d 68, 72–73 (2d Cir.1977). While the Seventh Circuit has not specifically addressed the issue, the act of state doctrine has been applied within this district. *In re Oil Spill by Amoco Cadiz,* 491 F.Supp. 161 (N.D.Ill.1979) (Opinion of McGarr, J.). In that case, the court recognized that the act of state doctrine required that cases involving political acts of a foreign state "should be handled on a diplomatic, not a judicial level." 491 F.Supp. at 169.

In determining whether the Soviet Union's denial of plaintiff Frolova's husband's emigration is an act of state privileged by the doctrine, this court need look no further than *Underhill v. Hernandez,* 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897). In that case, plaintiff Underhill's plight was similar to that of Frolova's husband. He was initially denied the right to emigrate from a foreign country, but was subsequently released. The United States Supreme Court declined to entertain Underhill's suit against the sovereign. The denial of his request for emigration was an act of state and as such was "not properly the subject of adjudication in the courts of an-other government." 168 U.S. at 254, 18 S.Ct. at 85. In the more recent case of *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371 (5th Cir.1980), the Second Circuit recognized the continued validity of *Underhill,* finding a denial of emigration to be an act of state "foreclosing judicial inquiry into the validity or propriety of such acts...." 621 F.2d at 1380. Therefore, without sanctioning the Soviet Union's actions in this case, they are clearly the actions of a sovereign state and this court will defer from sitting in judgment of them.