**Albert BRAKA, David Braka, Pauline Braka and Robert Braka, Plaintiffs,**

v.

**MULTIBANCO COMERMEX, S.A., Defendant.**

**No. 83 Civ. 4160 (DNE).**

United States District Court, S.D. New York.

Aug. 1, 1984.

Lenefsky, Meier & Novod, New York City, for plaintiffs; Lewis Novod, New York City, of counsel.

Kelley Drye & Warren, New York City, for defendant; Paul F. Doyle, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

Plaintiffs brought this action to recover money allegedly owed on two certificates of deposit ("CDs") made with defendant and to rescind the CD contracts and recover damages allegedly incurred from securities law violations by defendant in connection with the CDs. Jurisdiction is based upon 28 U.S.C. § 1603(a) and 15 U.S.C. § 77v(b). Defendant has moved pursuant to Fed.R.Civ.P. 12(b) to dismiss.

## FACTS

Plaintiffs are residents of New York State. Defendant is a banking corporation organized under the laws of Mexico. On or about September 29, 1981 plaintiffs Albert and Pauline Braka purchased a $300,000 CD with a twelve month maturity date from defendant. At the same time plaintiffs Robert and David Braka also purchased a $300,000 CD with a twelve month maturity date. The purchases were arranged by defendant's New York licensed agent, situated at One State Street Plaza, New York, NY. The principal and interest, at a rate of 22.94% per annum, on the CDs were payable in dollars in Mexico, where the deposits were held. Interest payments were in fact transmitted from Mexico to the plaintiffs' bank in New York. Defendant is not authorized to do banking business in New York State.

In August 1982 the Mexican government, to preserve its dwindling foreign currency reserve, promulgated rules and regulations prohibiting the withdrawal of any money in foreign currency bank accounts within Mexico and directing that money was to be withdrawn only in Mexican pesos at a rate of exchange fixed by the Mexican government. On September 1, 1982 the Mexican government nationalized the defendant bank. On September 29, 1982—the maturity date of the plaintiffs' CDs—the fixed rate of exchange was 70 pesos to the dollar, which was a little more than half of the market exchange rate, which was approximately 135 pesos to the dollar.

Plaintiffs, in count one, demand $144,000 on each CD based on defendant's alleged breach of contract. In count two plaintiffs allege that the CDs were "securities" and demand rescision pursuant to 15 U.S.C. §§ 77e and 77*l*. Plaintiffs further allege in count two that defendant made a fraudulent misrepresentation and failed to disclose certain information, as a result of which plaintiffs demand damages pursuant to 15 U.S.C. § 77q.

The defendant has moved: (1) to dismiss both claims on the grounds that they are barred by the act-of-state doctrine, the Foreign Sovereign Immunities Act, and the Articles of Agreement of the International Monetary Fund; and (2) to dismiss the securities law claims on the grounds that they are barred by the statute of limitations and that they fail to state a cause of action.

## DISCUSSION

The Foreign Sovereign Immunities Act ("FSIA") provides that subject to cer-

tain exceptions "a foreign state shall be immune from the jurisdiction of the courts of the United States and the States." 28 U.S.C. § 1604. Plaintiffs concede that defendant would normally fall within the purview of this provision, but contend that defendant falls within the commercial activity exception, 28 U.S.C. § 1605(a)(2), which permits a suit against a foreign state or its agency if the cause of action arises from strictly "commercial activity."

The "commercial activity" exception must be viewed in connection with the act-of-state doctrine. In *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371 (5th Cir.1980) plaintiffs' travel package with defendants was aborted when Dominican immigration officials denied plaintiffs entry into that country upon their arrival at the Santo Domingo airport because of their inclusion on an official list of "undesirable aliens." Plaintiffs sued the Dominican national airline, among others, for false imprisonment and battery as well as for a refund of the costs of the vacation package. The court stated that the claims of false imprisonment and battery were barred by the FSIA despite the "commercial activity" exception applicable generally to the airline:

> The focus of the [commercial activity] exception to immunity recognized in § 1605(a)(2) is not on whether the defendant generally engages in a commercial enterprise or activity, as an airline such as Dominicana unquestionably does; rather, it is on whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity [or derives from an act-of-state] .... *Yessenin-Volpin v. Novosti Priess Agency*, 443 F.Supp. 849, 855–56 (S.D.N.Y.1978) (holding generally commercial Soviet news agencies immune for alegedly libelous story produced for official Soviet state publications) .... Dominicana [the airline] was impressed into service ... by Dominican immigration officials [as an act-of-state] pursuant to that country's laws.

*Id.* at 1379.

In the case at bar, the banking activities of defendant were unquestionably commercial activities falling generally within the exception to the FSIA. The plaintiff's cause of action for breach of contract, however, arose from the defendant's conduct that was mandated by the Mexican government's act-of-state in the sovereign regulation of Mexican currency. That cause of action is non-justiciable under the act-of-state doctrine.[1]

■ Plaintiffs' claims of securities law violations, however, did arise directly out of defendant's commercial activity and thereby fall within the "commercial activity" exception to the FSIA. The Fifth Cir-

---

1. The court in *Braka et al. v. Bancomer, S.A.*, 589 F.Supp. 1465 (S.D.N.Y.1984), which dismissed a similar suit based upon the act-of-state doctrine, discussed this distinction between immunity under the FSIA and non-justiciabiity under the act-of-state doctrine.

Other district courts facing disputes arising out of the same Mexican currency regulations have dismissed claims similar to those at issue in the case at bar. In *Frankel v. Banco Nacional de Mexico, S.A.*, No. 82–6457 (S.D.N.Y. May 31, 1983) the court wrote,

> It is true, as plaintiffs contend, that the complaint alleges a breach of the terms of a certificate of deposit issued by Banco Nacional in the course of its purely commercial banking activities. However, plaintiffs allege no conduct on the part of Banco Nacional in breach of its obligations to plaintiffs other than measures taken by Banco Nacional to comply with the currency control rules and regulations promulgated by the Mexican Government.... There is no doubt that the promulgation of the currency control rules and regulations by the Mexican Government was a public act which only a sovereign could perform.

*Accord Braka et al. v. Nacional Financiera, S.A.*, No. 83–4161 (S.D.N.Y. July 9, 1984); *Callejo v. Bancomar*, CA–3–82–1604–D (N.D.Tex. Feb. 25, 1984).

The plaintiffs' contention that the Hickenlooper Amendment, 22 U.S.C. § 2370(e)(2), changes the outcome here is without merit. That amendment requires federal courts to hear a case, despite the act-of-state doctrine, if the case arises out of a "confiscation" of property that violates international law. It is clear, however, without a discourse on the subtle differences between a regulation and a "taking", that the Mexican government's actions giving rise to this action were regulatory in nature and not in violation of international law.

cuit stated in *Arango* that the FSIA did not bar the plaintiffs' claims that arose out of the misfeasance of the Dominican airline in its commercial activity, for example, in negligently failing to warn plaintiffs about the Dominican Republic's immigration regulations. "Each of these claims, and the duties alleged therein to have been breached, arose directly from or in connection with the marketing and execution of contracts—i.e., the sale of airline tickets and 'tourist cards' necessary to enter Dominican Republic—by Dominicana, along with the other defendants, in the normal course of its airline business in the United States." *Id.* at 1379–80. Similarly, here the plaintiffs' claims under count two, that the defendant illegally sold them unregistered securities and made false statements in connection with the sale of securities, both arise out of the defendant's purely commercial activity.

■ These claims, nevertheless, must be dismissed for other reasons. Plaintiffs' claim under 15 U.S.C. § 77*l*, that defendant sold them unregistered securities, is barred by the statute of limitations.[2] The sale occurred on or about September 29, 1981. This action was filed on June 1, 1983. The statute of limitations on actions under section 77*l* is one year. 15 U.S.C. § 77m.

■ Plaintiffs' contention that the statute of limitations was tolled by defendant's misrepresentation and nondisclosures is without merit. The alleged misrepresentation and nondisclosures occurred in August 1982, plaintiff knew the full set of facts about the riskiness of the CDs after the nationalization in September 1982, hence the period, *if any*, of deception was at most two months.

**2.** A threshold question is whether these CDs are securities regulated by the securities law. Because the CDs are sold by a foreign bank and are not regulated as a similar CD from a United States bank would be regulated, the court assumes for the purposes of this motion that they are securities under Title 15. *Wolf v. Banco Nacional de Mexico,* 549 F.Supp. 841 (N.D.Cal. 1982).

**3.** It is well established that a misrepresentation or a nondisclosure, to be actionable under

■ These same allegations, furthermore, cannot support a cause of action under section 77q because they were not material to the plaintiffs' decision to purchase the certificates of deposit. The alleged misrepresentation and nondisclosures could have had no effect on the plaintiff's decision to purchase the CDs. Plaintiffs' allegations that the defendant misrepresented the protection afforded to the pesos/dollar exchange rate by the Mexican government is of no consequence because plaintiffs expected, and by contract were entitled, to receive principal and interest payments in dollars. Plaintiffs received pesos only through the unexpected regulatory act of the state of Mexico. Similarly plaintiffs' other allegations that defendant failed to disclose information about the stability of the pesos/dollar exchange rate also are irrelevant. Finally, plaintiffs' allegation that defendant should have disclosed a prediction on the course of world economics and Mexican policy is frivolous—no securities seller is bound to make predictions about world economic trends. *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978) (no "fraud by hindsight"). These risks were included in the high interest rates on the CDs. In addition, the alleged misrepresentation and nondisclosures occurred at least 10 months after the sales to plaintiffs and therefore could not be "in connection" with the sales.[3]

## CONCLUSION

The defendant's motion to dismiss is granted. This action is dismissed with prejudice.

§ 77q, must occur "in connection" with the sale, i.e. at or before the time the buyer commits himself to the sale. *Kogan v. National Bank of North America,* 402 F.Supp. 359, 361 (S.D.N.Y. 1975) and cases cited therein; *SEC v. National Student Marketing,* 457 F.Supp. 682, 703 (D.D.C. 1978).

In this case, the pleadings also fall woefully short of the Fed.R.Civ.P. 9(b) requirement of particularity.